Philip BANKS, Appellant,

v.

Donald WOLK, Brad Cohen, Larry Cohen, First Fidelity Insurance Corp., James Weiner, Esquire, First Fidelity Financial Group.

No. 90–1278.

United States Court of Appeals,
Third Circuit.

Argued Sept. 18, 1990.

Decided Nov. 9, 1990.

Robert J. Sugarman (argued), Sugarman & Associates, Philadelphia, Pa., for appellant.

Michael P. Coughlin (argued), David N. Bressler, Lesser & Kaplin, Blue Bell, Pa., for appellee Donald Wolk.

Thomas Martin (argued), Philadelphia, Pa., for appellees Brad Cohen, Larry Cohen, First Fidelity Ins. Corp., James Weiner and First Fidelity Financial Group.

Before HIGGINBOTHAM, Chief Judge, SCIRICA and ALDISERT, Circuit Judges.

### OPINION OF THE COURT

SCIRICA, Circuit Judge.

This case requires us once again to address the question of what constitutes a "pattern of racketeering activity" under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C.A. §§ 1961–1968 (1984 & Supp.1990).

Plaintiff Philip Banks filed an initial complaint against defendants Donald Wolk, Brad Cohen, Larry Cohen, James Weiner, First Fidelity Insurance Corporation

("FFIC"), and First Fidelity Financial Group ("FFFG"). The complaint contained both RICO and pendent state law claims arising from an alleged real estate fraud. The district court dismissed this complaint under Fed.R.Civ.P. 12(b)(6) for failure to allege a sufficient "pattern" under RICO, and plaintiff sought leave to file an amended complaint containing new allegations. The district court denied this motion on the grounds that the amended complaint would still fail to state a RICO claim, and plaintiff now appeals from this denial. We will affirm the district court's dismissal of the RICO claims against defendants Donald Wolk, James Weiner, FFIC, and FFFG. However, we will reverse the order of the district court with instructions to allow certain claims against Brad Cohen and Larry Cohen to proceed.

### I. BACKGROUND

Denials of leave to amend a complaint under Fed.R.Civ.P. 15(a) are reviewed for abuse of discretion. *Kiser v. General Elec. Corp.*, 831 F.2d 423, 426–27 (3d Cir.1987), *cert. denied*, 485 U.S. 906, 108 S.Ct. 1078, 99 L.Ed.2d 238 (1988). However, reversal is proper when the district court bases its denial on an erroneous rule of law. *See, e.g., Centifanti v. Nix*, 865 F.2d 1422, 1431 (3d Cir.1989). Here, the district court denied plaintiff's motion for leave to amend on the grounds that the amended complaint would fail to withstand a motion to dismiss under Fed.R.Civ.P. 12(b)(6). Consequently, we must accept as true all factual allegations in the amended complaint and all reasonable inferences that can be drawn from them. The amended complaint must be construed in the light most favorable to the plaintiff, and can be dismissed only if the plaintiff has alleged no set of facts upon which relief could be granted. *Ransom v. Marrazzo*, 848 F.2d 398, 401 (3d Cir.1988); *Labov v. Lalley*, 809 F.2d 220, 221–22 (3d Cir.1987). We note that in RICO actions, "in many cases plaintiffs will be able to withstand a facial attack on the complaint and have the opportunity to have their pattern allegations

threshed out in discovery." *Swistock v. Jones,* 884 F.2d 755, 758 (3d Cir.1989).

The allegations in plaintiff's initial complaint pertained solely to a transaction involving the American Patriot Building in Philadelphia ("AP Building"). According to the complaint, Banks and Wolk had been partners in a partnership that owned the AP Building ("Partnership"). On July 28, 1987, the Partnership entered into an agreement to sell the AP Building to Brad Cohen, his brother Larry Cohen, and FFIC. Unknown to Banks, however, Wolk was also an undisclosed partner in the buying enterprise, and was to become a 50% owner of the building upon sale. The buyers delayed the transaction, which was never completed. After Wolk refused to enter into an agreement to pay Partnership debts, a creditor bank foreclosed upon the AP Building.

The gravamen of the complaint was that Wolk and the Cohens concealed Wolk's involvement with the buyers in an attempt to gain a favorable price for the AP Building. The complaint also alleged that James Weiner, the attorney for the buyers, participated in this fraud. The RICO claim was based on allegations that all defendants committed two or more unspecified acts of mail and wire fraud in carrying out the scheme. The district court dismissed the RICO count for failure to allege a "pattern of racketeering activity," since the alleged fraudulent scheme "was a one-time happening without the threat of repetition." *See H.J. Inc. v. Northwestern Bell Telephone Co.,* —— U.S. ——, 109 S.Ct. 2893, 2901–02, 106 L.Ed.2d 195 (1989) (RICO pattern requires that predicate acts pose threat of continuing criminal activity). Having dismissed the RICO claim, the court then declined to assume jurisdiction over the pendent state law claims.

Plaintiff sought leave to file an amended complaint containing six additional specific allegations against Brad and Larry Cohen, which are as follows. First, in 1982 Brad Cohen formed an entity called the Philadelphia Gold Corporation which later was used "to illegally obtain funds from investors via fraudulent sales orders." Amended Complaint at ¶ 50. Second, in 1989 the Cohens signed an illusory sale agreement for the Rittenhouse Club in Philadelphia, for the purpose of lowering the property's value. *Id.* at ¶ 53(a). Third, in 1987 they misappropriated $1.5 to 2 million in profits from "Securities Trading Commissions [sic]" and invested this money in real estate. *Id.* at ¶ 53(b). Fourth, in 1986 they misused funds that had been entrusted to them by an investor. *Id.* at ¶ 53(c). Fifth, in 1984 or 1985 they defrauded another investor of profits that were owed him. *Id.* at ¶ 53(d). Sixth, sometime between 1986 and 1989 Brad Cohen "illegally financed another party as a strawman in a real estate transaction ... where he was specifically rejected as a potential partner." *Id.* at ¶ 53(e).

FFIC and FFFG are named as the RICO "enterprises." The amended complaint alleges that FFIC and FFFG were formed and operated with money derived from the Philadelphia Gold Corporation scheme, and were the vehicles through which the other frauds, with the exception of the last, were committed. Again, each defendant was alleged to have committed two or more unspecified acts of mail and wire fraud in carrying out these schemes. There are no allegations that Banks, Wolk, or Weiner were involved in any way in the additional frauds.

The district court held that the amended complaint still failed to allege a "pattern of racketeering activity," since the additional allegations were not sufficiently "related" to the AP Building scheme. *See H.J. Inc.,* —— U.S. at ——, 109 S.Ct. at 2900–01 (RICO pattern requires relationship between predicate acts). The district court stressed that neither Banks nor Wolk were alleged to have participated in the additional schemes, and that "the transactions in themselves bear no relationship to the breach of fiduciary duty in the original complaint."

## II. STATUTORY LANGUAGE

The RICO statute authorizes civil suits by "[a]ny person injured in his business or property by reason of a violation of [18

U.S.C. § 1962]." 18 U.S.C. § 1964(c) (1988). Section 1962(a) prohibits "any person who has received any income derived ... from a pattern of racketeering activity" from using that money to acquire, establish or operate any enterprise that affects interstate commerce. Section 1962(b) prohibits any person from acquiring or maintaining an interest in, or controlling any such enterprise "through a pattern of racketeering activity." Section 1962(c) prohibits any person employed by or associated with an enterprise affecting interstate commerce from "conduct[ing] or participat[ing] ... in the conduct of such enterprise's affairs through a pattern of racketeering activity." Finally, section 1962(d) prohibits any person from "conspir[ing] to violate any of the provisions of subsections (a), (b), or (c)." A "pattern of racketeering activity" requires commission of at least two predicate offenses on a specified list. 18 U.S.C.A. §§ 1961(1), (5) (1984 & Supp. 1990).

We note that no defendant can be liable under RICO unless he participated in two or more predicate offenses sufficient to constitute a pattern. This participation need not be direct. RICO recognizes liability for those who merely aid and abet the underlying predicate offenses. *Petro–Tech, Inc. v. Western Co. of North America*, 824 F.2d 1349, 1356–58 (3d Cir.1987). Moreover, a defendant can be liable under RICO's conspiracy provision for agreeing to the commission of a pattern of racketeering activity, even if that defendant does not directly participate in the underlying acts. *United States v. Adams*, 759 F.2d 1099, 1116 (3d Cir.), *cert. denied*, 474 U.S. 906, 971, 106 S.Ct. 275, 336, 88 L.Ed.2d 236, 321 (1985); *see also Shearin v. E.F. Hutton Group, Inc.*, 885 F.2d 1162, 1166–67 (3d Cir.1989) (RICO conspiracy requires "agreement to commit predicate acts and knowledge that the acts were part of a pattern of racketeering activity.").

In this case, defendants Wolk and Weiner are alleged only to have participated in the AP Building fraud, and there is no indication that either was involved, directly or indirectly, in any of the additional schemes. Consequently, we must consider only the AP Building scheme allegations in determining whether a sufficient "pattern" has been alleged against either Wolk or Weiner. Even if the AP Building scheme were part of a pattern of acts committed by the Cohens, the additional schemes cannot affect the liability of Wolk or Weiner, since they neither participated in those frauds nor agreed to their commission. Because the further allegations involve the Cohens, we will consider separately whether a sufficient pattern has been alleged against them.

Although no party has raised the issue, we note also that FFIC and FFFG are named both as RICO "enterprises" and as defendants. Such a dual role is permissible in actions based on 18 U.S.C. § 1962(a), *Petro–Tech, Inc. v. Western Co. of North America*, 824 F.2d 1349, 1360–61 (3d Cir.1987), but not in those based on section 1962(c), *B.F. Hirsch v. Enright Ref. Co.*, 751 F.2d 628, 633–34 (3d Cir.1984). Banks appears to allege violations of sections 1962(a), (b), and (c). However, he does not allege that he was injured specifically by the use or investment of income in any enterprise, as is required under section 1962(a). *See Rose v. Bartle*, 871 F.2d 331, 357–58 (3d Cir.1989). In addition, the amended complaint does not allege a specific nexus between control of any enterprise and the alleged racketeering activity, as is required under section 1962(b). *See Shearin v. E.F. Hutton Group, Inc.*, 885 F.2d 1162, 1168 n. 2 (3d Cir.1989). Consequently, section 1962(c) is the only available basis for liability. Because FFIC and FFFG are named as the enterprises upon which this liability is based, they must be dismissed as RICO defendants.

### III. THE *H.J. INC.* STANDARD

In *H.J. Inc. v. Northwestern Bell Telephone Co.*, —— U.S. ——, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989), the Supreme Court addressed the standards governing RICO's pattern requirement. The Court stressed that a pattern requires more than the commission of two or more predicate acts. A plaintiff must show also "that the racke-

**422**

teering acts are related, *and* that they amount to or pose a threat of continued criminal activity." *Id.* at ——, 109 S.Ct. at 2900 (emphasis in original). These are two separate requirements, "though in practice their proof will often overlap." *Id.*

The test for "relatedness" is broad. Borrowing language from another statute, *H.J. Inc.* states that criminal acts are sufficiently related if they " 'have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.' " *Id.* at ——, 109 S.Ct. at 2901 (*quoting* Dangerous Special Offender Sentencing Act, 18 U.S.C. § 3575(e) (1982), *repealed by* Sentencing Reform Act of 1984, Pub.L. No. 98–473, tit. II, § 212(a)(2), 98 Stat.1987); *see also Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985). This statement remains our only guidance in this area.

As for the "continuity" requirement, the Court rejected the notion that RICO requires proof that a defendant engaged in multiple criminal "schemes." *H.J. Inc.,* —— U.S. at ——, 109 S.Ct. at 2901. Predicate offenses committed in furtherance of a single criminal scheme can constitute a RICO pattern if the acts present the threat of future criminal activity. The criminal conduct need not be ongoing. Past conduct will satisfy the continuity requirement if "by its nature [it] projects into the future with a threat of repetition." *Id.* at ——, 109 S.Ct. at 2902 (*citing Barticheck v. Fidelity Union Bank/First Nat'l State,* 832 F.2d 36, 39 (3d Cir.1987)).

The Court stressed that the question of continuity depends on the facts of each case, but noted that "[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct." *Id.* Although continuity is "centrally a temporal concept," *id.,* this court has questioned whether the length of time over which the criminal activity occurs or threatens to occur should be the decisive factor without reference to the "societal threat" posed by the activity. *Marshall–Silver Constr. Co. v. Mendel,* 894 F.2d 593, 597 (3d Cir.1990).

## IV. THE ALLEGATIONS AGAINST WOLK AND WEINER

■ As we have noted, the amended complaint does not allege that defendants Wolk and Weiner participated in any fraud other than the AP Building scheme. We must examine whether the actions of these defendants meet the separate requirements of relatedness and continuity. Since this alleged scheme involved a single real estate transaction, the relatedness requirement is satisfied. The unspecified predicate acts of mail and wire fraud [1] are all related to the common goal of obtaining a lower price for the building. Thus, the critical question is whether the acts "pose a threat of continued criminal activity." We agree with the district court that they do not.

The AP Building scheme was an attempt to defraud a single investor of his interest in a single piece of real estate over a relatively short period of time. The essence of the charge is that the defendants failed to disclose Wolk's relationship with the buy-

---

**1.** Although it was not addressed in the district court or on appeal, we raise the question whether the allegations of mail and wire fraud in the amended complaint are sufficient to satisfy the requirement of Fed.R.Civ.P. 9(b) that fraud be pleaded with particularity. *See Saporito v. Combustion Eng'g Inc.,* 843 F.2d 666, 673–76 (3d Cir.1988), *vacated on other grounds,* 489 U.S. 1049, 109 S.Ct. 1306, 103 L.Ed.2d 576 (1989) (blanket allegation of mail and wire fraud in RICO case, without indicating who made or received fraudulent representation, is insufficient under Rule 9(b)); *see also Seville Indus. Mach. Corp. v. Southmost Mach. Corp.,* 742 F.2d 786, 791 (3d Cir.1984), *cert. denied,* 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985) (allegations must be such as "to place the defendants on notice of the precise misconduct with which they are charged"). The amended complaint gives a general description of the various fraudulent schemes, but contains only a blanket statement that all defendants committed two or more acts of mail and wire fraud "in connection with their real estate scheme." Amended Complaint at ¶¶ 57, 58. The complaint does not specify any correspondence or conversation alleged to constitute mail or wire fraud. We express no opinion of the merits of this issue.

ers and then somehow used his inside position to drive the Partnership into bankruptcy. It is not clear when the defendants actually formulated their scheme, but the injury to Banks occurred during the eight month period between July 28, 1987, when the sale agreement was signed, and shortly after March 21, 1988, when the creditor bank foreclosed upon the building.

In *H.J. Inc.*, by contrast, the Court stressed that the racketeering predicates "occurred with some frequency over at least a 6–year period." —— U.S. at ——, 109 S.Ct. at 2906. That case involved allegations of long-term bribery of regulators by a telephone company. Unlike *H.J. Inc.*, there is no indication that fraud such as the AP Building scheme is "a regular way of doing business" for Wolk or Weiner. *See id.* at ——, ——, 109 S.Ct. at 2902, 2906. Nor is there any suggestion that Wolk or Weiner would have continued to defraud Banks in any way. *Cf. id.* at ——, 109 S.Ct. at 2902 (promise to extort money regularly as part of ongoing "insurance" racket would establish threat of continuity despite small number of predicate acts).

Rather, the AP Building scheme more closely resembles that involved in *Marshall–Silver Construction Co. v. Mendel*, 894 F.2d 593 (3d Cir.1990), in which the defendants were alleged to have destroyed a business by filing a false bankruptcy petition. In that case, we stressed that "the alleged illegal activity posed no threat of *additional* repeated criminal conduct over a significant period." *Id.* at 597 (emphasis in original). Similarly, the alleged actions of Wolk and Weiner were directed solely at defrauding Banks of his interest in the AP building, and do not amount to or threaten long-term criminal activity. This case is unlike *Swistock v. Jones*, 884 F.2d 755 (3d Cir.1989). Although that case centered around a single episode of real estate fraud lasting approximately one year, there

were allegations of further misrepresentations by the defendants in regard to other potential transactions with the plaintiffs. *Id.* at 759. In this case, there is no such indication of possible future misconduct by Wolk or Weiner.

We note that *H.J. Inc.* has not rendered obsolete our prior multi-factor pattern inquiry which focused on "the number of unlawful acts, the length of time over which the acts were committed, the similarity of the acts, the number of victims, the number of perpetrators, and the character of the unlawful activity." *Barticheck v. Fidelity Union Bank/First Nat'l State*, 832 F.2d 36, 39 (3d Cir.1987). *See Marshall–Silver*, 894 F.2d at 596 (*Barticheck* approach entirely consistent with *H.J. Inc.*). After *H.J. Inc.*, we must focus on these factors as they bear upon the separate questions of continuity and relatedness. Thus, the fact that Wolk and Weiner are alleged to have harmed only one victim in a single scheme is not necessarily dispositive. *See Swistock*, 884 F.2d at 758. But there is no factor in this case indicating that the actions of Wolk and Weiner threaten future harm to anyone. The AP Building scheme, considered alone, amounts to nothing more than an isolated incident of "garden variety" real estate fraud.

## V.  THE ALLEGATIONS AGAINST THE COHENS

■ As we have noted, the additional allegations against Brad and Larry Cohen place these defendants in a different situation from Wolk and Weiner. The amended complaint describes fraudulent behavior by the Cohens extending well beyond the AP Building scheme. Construing these allegations in the light most favorable to the plaintiff, we believe the amended complaint sufficiently alleges that the Cohens have engaged in a pattern of racketeering activity.[2]

---

**2.** We assume without deciding that the allegations against the Cohens state substantive claims of mail or wire fraud, because the issue was not addressed in the district court or on appeal. Should the district court later decide that the AP Building scheme allegations do not state such a claim against the Cohens, then Banks will lack

standing to pursue a RICO action against them. *See Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985) ("[T]he plaintiff only has standing if ... he has been injured in his business or property by the conduct constituting the violation."). Moreover, the sufficiency of the pattern may require reas-

At the outset, we note that two of the six additional specific allegations against the Cohens cannot be considered part of a pattern comprising the AP Building scheme. The amended complaint lists FFIC and FFFG as the RICO "enterprises" upon which liability is based. Under 18 U.S.C. § 1962(c), all predicate acts in a pattern must somehow be related to the enterprise. This nexus requirement is satisfied when " '[o]ne is enabled to commit the predicate offenses solely by virtue of his position in the enterprise or involvement in or control over the affairs of the enterprise; or the predicate offenses are related to the activities of that enterprise.' " *United States v. Provenzano*, 688 F.2d 194, 200 (3d Cir.), *cert. denied*, 459 U.S. 1071, 103 S.Ct. 492, 74 L.Ed.2d 634 (1982) (*quoting United States v. Scotto*, 641 F.2d 47, 54 (2d Cir. 1980), *cert. denied*, 452 U.S. 961, 101 S.Ct. 3109, 69 L.Ed.2d 971 (1981)).

However, the amended complaint alleges no connection between either enterprise and the charge that Brad Cohen "illegally financed a strawman." Amended Complaint at ¶ 53(e). In addition, the allegation involving the Philadelphia Gold Corporation states only that Brad Cohen invested the profits from that fraud in FFIC and FFFG, in violation of 18 U.S.C. §§ 1962(a) and (b). *Id.* at ¶ 51. No other relationship between this scheme and the named enterprises is alleged. Thus, neither of these schemes can form part of a pattern of acts underlying the § 1962(c) violation.

The amended complaint does allege that FFIC and FFFG were employed in carrying out the other five schemes. We note that the sufficiency of the pattern may require reassessment should that nexus later prove inadequate. At this stage, however, we find the remaining allegations against the Cohens sufficient to constitute a pattern of racketeering activity under § 1962(c). The element of continuity clearly has been established. In addition to the AP Building scheme, the amended complaint charges the Cohens with using FFIC and FFFG in the commission of four other frauds be-

tween 1984 and 1989. Accepting these allegations as true, they indicate that fraudulent behavior is a "regular way of doing business" for the Cohens. *See H.J. Inc.*, ― U.S. at ―, 109 S.Ct. at 2902. As a consequence, a threat of continuing criminal behavior is present.

The main question, therefore, is whether the additional allegations are sufficiently "related" to the AP Building scheme. We believe that they are. As noted above, we must determine whether the Cohens' alleged criminal acts "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* at ―, 109 S.Ct. at 2901. The Supreme Court recognized that this test is broad, stating that "[w]e have no reason to suppose that Congress had in mind ... any more constrained a notion of the relationships between predicates that would suffice." *Id.*

This test admittedly is difficult to apply. *See id.* at ―, 109 S.Ct. at 2907 (Scalia, J., concurring). In this case, the district court emphasized that neither Banks nor Wolk was involved in any of the additional schemes. However, the fact that Banks was not a victim of the additional frauds should not carry much weight. The reference to "similar victims" in *H.J. Inc.* cannot be read to require that a plaintiff be injured by more than one predicate act. *See, e.g., Town of Kearny v. Hudson Meadows Urban Renewal Corp.*, 829 F.2d 1263, 1268 (3d Cir.1987) ("Reading into the statute a requirement that a civil plaintiff prove injury from the entire pattern rather than from any predicate act would ... be inconsistent with the core congressional purposes behind its enactment."). The alleged victims in this case were "similar" in the sense that they all were engaged in business dealings with the Cohens through FFIC and FFFG. Likewise, the reference to "similar participants" does not require that Wolk have participated in the Cohens' other schemes.

---

sessment if the district court determines that any of the additional allegations do not amount

to mail or wire fraud as a matter of law.

Once the requisite connection with the RICO enterprise is shown, the fact that a defendant employed different associates for different predicate acts should not be of overriding significance.

Rather, we focus on the nature of the alleged criminal activity. *Cf. Shearin v. E.F. Hutton Group, Inc.*, 885 F.2d 1162, 1168 (3d Cir.1989) (focusing on fact that "the distinctive character of the unlawful activity set out was securities fraud."). The various alleged schemes employed different techniques, but taken together they indicate the Cohens were at least partially in the business of defrauding those who dealt with FFIC and FFFG. There are more specific similarities as well. The Rittenhouse Club and the AP Building schemes both were attempts to drive down the price of real estate. In addition, the AP Building scheme and the allegations of misuse of investment funds all involved breaches of fiduciary duty. We believe the amended complaint adequately alleges criminal episodes that are not "isolated events."

The relatedness requirement has received less judicial attention than the continuity requirement, perhaps because most disputed RICO allegations have involved single schemes. *See, e.g., Medallion Television Enters. v. SelecTV of California, Inc.*, 833 F.2d 1360, 1363 (9th Cir.1987) (relatedness seldom at issue), *cert. denied,* —U.S. —, 109 S.Ct. 3241, 106 L.Ed.2d 588 (1989). However, when a plaintiff alleges predicate offenses in furtherance of multiple schemes, we should avoid interpreting the relatedness requirement too narrowly. A single scheme with a limited number of victims often will not project the necessary threat of continuing criminal activity. Thus, if too close a relationship among multiple schemes is required, cases within RICO's intended ambit may be improperly dismissed. In organized crime cases, where the RICO enterprise exists solely for criminal purposes, the necessary nexus between the predicate acts and the enterprise will often be enough to satisfy

the relatedness requirement. *Cf. United States v. Indelicato*, 865 F.2d 1370, 1383 (2d Cir.) ("In some cases both ... relatedness and continuity ... may be proven through the nature of the RICO enterprise."), *cert. denied,* — U.S. —, 110 S.Ct. 56, 107 L.Ed.2d 24 (1989). In cases such as this, which allege multiple fraudulent schemes conducted through an otherwise legitimate entity, the relatedness requirement should not insulate defendants who merely vary the methods by which they defraud their victims.

## VI. CONCLUSION

Because the amended complaint does not indicate that defendants Wolk or Weiner have engaged in conduct that poses the threat of continued criminal activity, we will affirm the dismissal of the RICO claims against them. We also will affirm the dismissal of the RICO claims against defendants FFIC and FFFG. However, because the amended complaint adequately alleges that Brad Cohen and Larry Cohen have engaged in a "pattern of racketeering activity," we will reverse the order of the district court and remand with instructions to allow the § 1962(c) and state law claims to proceed against these defendants. Since the state law claims against the Cohens remain, we leave it to the district court to reconsider whether it desires to dismiss the pendent state law claims against the other defendants.[3] We stress that our decision is based solely upon the adequacy of the pleadings. It may be that specific issues will be susceptible to resolution by summary judgment. *See Swistock v. Jones*, 884 F.2d 755, 758 (3d Cir.1989).

Each side to bear its own costs.

**3.** We note that our affirmance of the district court's order dismissing the RICO charges against Wolk, Weiner, FFIC, and FFFG does not preclude Banks from bringing a common law fraud action, in an appropriate forum, against his partner Wolk or other parties.