**EUREKA PAPER BOX COMPANY, et ux., Plaintiffs,**

v.

**WBMA, INC., VOLUNTARY EMPLOYEE BENEFIT TRUST, et al., Defendants.**

**Civ. No. 89–0020.**

United States District Court, M.D. Pennsylvania.

June 26, 1991.

---

Clifford A. Rieders, Williamsport, Pa., for plaintiffs.

Laurence W. Daguee, Glenn R. Davis, Shumaker Williams, P.C., Harrisburg, Pa., for defendant NEP Ins. Services, Inc.

Mark M. Wilcox, John Chesney, Kevin A. Feeley, Drinker, Biddle & Reath, Philadelphia, Pa., for defendants Trust and Trust.

Michael O. Kassak, White & Williams, Philadelphia, Pa., for defendants Hartman Financial Services, Inc. and David J. Roche.

## MEMORANDUM

McCLURE, District Judge.

BACKGROUND:

Plaintiffs filed this action to recover for alleged ERISA [1] and RICO [2] violations committed in connection with the administration of an employee benefit plan established to provide health care coverage for the employees of members of the West Branch Manufacturing Association ("WBMA"). The ten plaintiffs [3] are employers who purchased health care coverage for their employees through the WBMA Voluntary Employee Benefit Plan and Trust (the "trust").

Named as defendants are: (1) the trust; (2) the plan administrator, Hartman Financial Services, Inc. ("Hartman"); (3) the claims administrator, NEP Insurance Services, Inc. ("NEP"); (4) David Roche, an employee of Hartman who served as trust manager; and (5) Michael J. Sharbaugh, Executive Director of the trust. (Plaintiffs' fourth amended complaint, filed Oct. 11, 1989, paras. 15–21.) [4]

In addition to their federal claims, plaintiffs allege pendent state common-law claims for: (1) negligent misrepresentation (Count III); (2) fraud (Count IV); (3) negligence and breach of fiduciary duty (Count

---

**1.** Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*

**2.** Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968.

**3.** The plaintiffs are:
(a) Eureka Paper Box Company
(b) Ceraln Corporation
(c) Bogert Precast, Inc.
(d) R.J. Carey Company, Inc.
(e) Donald L. Ault, Inc.
(f) Ralph S. Alberts Company, Inc.
(g) Techno–Craft, Inc.
(h) AM Sheet Metal
(i) Lundy Construction, Co., Inc., and
(j) John Savoy & Son, Inc.
Plaintiffs' fourth amended complaint, filed Oct. 11, 1989, paras. 4–14.

**4.** The trustee, Northern Central Bank, was initially named a defendant, but the claims against it were subsequently dismissed.

V); and (4) breach of express and/or implied contract and unjust enrichment (Count VI). (Plaintiffs' fourth amended complaint, filed Oct. 11, 1989, paras. 118–133) Plaintiffs seek injunctive relief, declaratory relief, monetary damages, counsel fees, costs and penalties. The trust has asserted a counterclaim for the payment of a withdrawal assessment which plaintiffs deny owing.[5]

Plaintiffs' claims arise out of a series of events which led, ultimately, to the termination of the trust effective October 1, 1987. Funding problems precipitated the trust's termination. Trust administrators first noted a disturbing trend of cost overruns due to an unexpected increase in claims during the winter of 1986. By spring of 1987, the trust was operating at a deficit and a funding increase was required to render it solvent. At a meeting held in March, 1987, participating employers voted to increase contribution rates to fund the deficit, and, hopefully, ensure future liquidity.

Unfortunately, the increase did not solve the problem, and the trust continued to operate at a deficit. At a meeting held September 13, 1988 and attended by representatives from fifty nine of the sixty-seven participating employers, two possible solutions were considered:[6] (1) fund the deficit, terminate the trust and re-institute coverage for employees of WBMA members through a group plan purchased from an insurance carrier, or (2) fund the deficit, increase trust contributions to guarantee future liquidity, and continue providing health care coverage through the trust.

The employers voted unanimously to terminate the trust effective October 1, 1988, fund the deficit, and re-institute coverage

through a carrier. Thereafter, the amount required from each participating employer was calculated actuarially and employers were advised of the amount they owed. All but ten of the participating employers paid their assessed share. The trust filed an action against the ten recalcitrant employers before the Court of Common Pleas of Lycoming County, Pennsylvania to collect their withdrawal assessments.

The ten employers then filed this action alleging various improprieties on the part of trust administrators. The trust filed a counterclaim for the unpaid withdrawal assessment.

Before the court are: (1) a motion for partial summary judgment on the counterclaim, filed by plaintiffs on April 20, 1990 (Record Document No. 78); (2) a motion for summary judgment by all defendants, filed June 17, 1990 (Record Document No. 98); and (3) a motion for summary judgment filed separately by defendant NEP on August 1, 1990 (Record Document No. 99).

Defendants' June 17th motion seeks judgment in their favor on plaintiffs' ERISA and RICO claims, the former on the ground that plaintiffs lack standing to pursue claims under ERISA, and the latter on the ground that plaintiffs have failed to establish the fundamental prerequisites for a RICO claim. We find in defendants' favor on both issues and will enter an order granting summary judgment in favor of all defendants on both federal claims. Because only pendent state claims remain, we will dismiss those claims so that they may more appropriately be resolved in state court, where the first action between these parties was filed.

---

5. Before this action was filed, the trust filed an action against the plaintiff-employers in the Court of Common Pleas of Lycoming County, Pennsylvania for payment of the withdrawal assessment. By agreement of the parties, that action was stayed pending final disposition of this case.

6. Attendance records were kept by a representative from Hartman Financial. Eight of the eleven plaintiff-employers were represented at the September 13, 1988 meeting.

Although Lundy Construction Company was not represented at the meeting, there is evidence of record which indicates that defendants Roche and Sharbaugh met with the president and controlling shareholder, Richard H. Lundy, Jr., on September 14, 1988 and at that meeting, advised Lundy of the continuing deficit problem and of the need for an increased assessment to pay outstanding claims.

DISCUSSION

A. *Motion for summary judgment standard*

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that *there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*" Fed.R. Civ.P. 56(c) (Emphasis supplied).

... [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

■ The moving party bears the initial responsibility of stating the basis for its motions and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. He or she can discharge that burden by "showing ... that there is an absence of evidence to support the nonmoving party's case." *Celotex, supra* at 323 and 325, 106 S.Ct. at 2553 and 2554.

■ The burden then shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial. This requires more than a showing "that there is some metaphysical doubt as to the material facts." *Matsushita Elect. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). If the evidence is merely "colorable" or is not "significantly probative," summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). See also: *Equimark Comm. Finance Co. v. CIT Financial Serv. Corp.*, 812 F.2d 141 (3d Cir.1987).

■ Issues of fact are "genuine only if a reasonable jury, considering the evidence presented, could find for the non-moving party." *Childers v. Joseph*, 842 F.2d 689, 694 (3d Cir.1988), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). Material facts are those which will affect the outcome of the trial under governing law. *Anderson, supra*, 477 U.S. at 248, 106 S.Ct. at 2510. In determining whether an issue of material fact exists, the court must consider all evidence in the light most favorable to the non-moving party. *White v. Westinghouse Electric Company*, 862 F.2d 56, 59 (3d Cir.1988).

B. *Plaintiffs' RICO claim*

Count II of plaintiffs' fourth amended complaint asserts a RICO claim based on acts allegedly committed in connection with administration of the trust. The predicate acts alleged are mail and wire fraud (18 U.S.C. §§ 1341 and 1343). (Plaintiffs' fourth amended complaint, filed Oct. 11, 1989, paras. 1.10–1.12)

RICO authorizes civil actions by "[a]ny person injured in his business or property by reason of a violation" of 18 U.S.C. § 1962. 18 U.S.C. § 1964(c) (1988). Section 1962 makes it unlawful for any person (a) to use money derived from a pattern of racketeering activity to acquire, establish or operate any enterprise that affects interstate commerce; (b) to acquire, maintain or control any such enterprise through a pattern of racketeering activity, or (c) to conduct or participate in the affairs of an enterprise affecting interstate commerce through a pattern of racketeering activity. 18 U.S.C. § 1962(a)–(c).

■ Plaintiffs allege that defendants have violated all three sub-sections. Dem-

onstrating a "pattern of racketeering activity" is a prerequisite to all three. It requires proof that defendants committed at least two predicate offenses listed in 18 U.S.C. § 1961(1), (5) (1984 & Supp.1990), along with a showing "that the racketeering acts are related, *and* that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989) (emphasis original). "[A]llegations cannot constitute a RICO 'pattern' unless they satisfy both the 'relatedness' and 'continuity' tests. Both tests depend heavily on the specific facts of each case." *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1412 (3d Cir.1991).

■ The United States Supreme Court recently delineated what is necessary to satisfy the continuity component. In *H.J. Inc., supra,* 109 S.Ct. at 2901, the Court rejected the theory that a RICO pattern requires proof of defendants' involvement in multiple criminal schemes and held that evidence of related predicate acts committed in furtherance of a single scheme may constitute a RICO pattern if those acts constitute or threaten long-term criminal activity. "Of course, not every single scheme comprising two or more predicate acts will constitute a pattern." *Kehr, supra,* 926 F.2d at 1412. In this context, continuity signifies either (1) a closed period of repeated conduct, i.e. "a series of related predicates extending over a substantial period of time" or (2) "past conduct that by its nature projects into the future with a threat of repetition." *H.J. Inc., supra,* 109 S.Ct. at 2902. The Supreme Court stressed that continuity is "centrally a temporal concept" and that the length of time over which the criminal activity occurs or threatens to occur is a key factor. *Kehr, supra,* 926 F.2d at 1412. "Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct." *H.J. Inc., supra,* 109 S.Ct. at 2902.

Although the length of time over which the criminal activity occurs, or threatens to occur, is an important factor, it is not the only factor. Congress intended the courts to follow a natural and common-sense approach to RICO's pattern element, and the Supreme Court has emphasized that analysis of continuity is fact-specific. In keeping with those principles, the Third Circuit has enumerated other factors relevant to the "pattern" inquiry—the number of unlawful acts, the similarity of the acts, the number of victims, the number of perpetrators, and the nature of the activities, and the character of the unlawful activity. *Barticheck v. Fidelity Union Bank/First National State,* 832 F.2d 36, 39 (3d Cir. 1987). The continuing viability of these considerations, post-*H.J. Inc.,* has been affirmed by the Third Circuit in several recent decisions, *Kehr, supra,* 926 F.2d at 1413 and *Banks v. Wolk,* 918 F.2d 418, 423 (3d Cir.1990) ("After *H.J. Inc.,* we must focus on these factors as they bear upon the separate questions of continuity and relatedness.") See also: *Marshall–Silver Construction Co., Inc. v. Mendel,* 894 F.2d 593, 597 (3d Cir.1990) (on remand from 492 U.S. 913, 109 S.Ct. 3233, 106 L.Ed.2d 582 (1989) ) ("[I]f the [United States Supreme] Court ... intended that the *duration* of the predicate acts or the threat arising therefrom should be determinative without reference to whether the societal threat was limited to a single, one time injury, we would not have expected the Court to eschew providing a specific standard in favor of a fact oriented, case-by-case development.") (Emphasis original)

In a series of post-*H.J. Inc.,* decisions, the Third Circuit has considered whether the facts alleged satisfy the continuity component. In *Kehr, Banks* and *Marshall–Silver,* the court found continuity lacking. An examination of the facts of each and the Third Circuit analysis of the factors involved will be helpful. *Kehr, supra,* involved alleged misrepresentations made in connection with several business loans. Plaintiffs charged that the defendants had committed several acts of mail fraud in an attempt to cause Kehr to default on the loans. The Third Circuit affirmed the dis-

trict court's dismissal of plaintiffs' RICO claim on the ground that they were insufficient allegations of continuing or threatened future criminal activity. The court found that the acts alleged involved nothing beyond "a short-term attempt to force a single entity into bankruptcy" with no suggestion of any "long-term association that exists for criminal purposes." *Kehr, supra,* 926 F.2d at 1417 (quoting *H.J. Inc., supra,* 109 S.Ct. at 2902).

*Banks, supra* involved allegations that the defendants had covertly used an inside partner to lower the price of real estate they were attempting to purchase. Two of the defendants had been involved only in this scheme, while several others had allegedly been involved in prior fraudulent schemes of varying types. With respect to the two defendants who had not been involved in any prior schemes, the district court found no basis for imposing RICO liability. The Third Circuit affirmed, based on evidence that the scheme involving the inside partner took place over an eight-month period, and was nothing more than "an attempt to defraud a single investor of his interest in a single piece of real estate over a relatively short period of time", with no suggestion of any additional conduct that threatened long-term criminal activity. *Banks, supra,* 918 F.2d at 422.

*Marshall–Silver, supra,* involved allegedly coercive attempts to pressure the plaintiff into paying a disputed debt. Among other things, defendants filed a fraudulent bankruptcy petition to force the plaintiff-company into involuntary bankruptcy. All of the coercive activities took place over a seven-month period. The Third Circuit affirmed the district court's dismissal of plaintiff's RICO claim, finding such conduct insufficient to satisfy the continuity requirement, and noting, in particular, that the "alleged illegal activity posed no threat of *additional* repeated criminal conduct over a significant period." *Marshall, supra,* 894 F.2d at 597 (emphasis original).

*Swistock v. Jones,* 884 F.2d 755 (3d Cir. 1989) applied the same principles of analysis, but based on the facts before the court, reached the contrary result. Although the gravamen of Swistock's complaint was a single incident of alleged real estate fraud that occurred over a period of approximately one year, there were allegations that defendants had attempted to enter into future transactions with the plaintiffs. This, the court found, indicated on-going conduct and the threat of future illegal acts. *Swistock, supra,* 884 F.2d at 759.

■ The rule which the Third Circuit has formulated from this series of cases is: "Although a single fraudulent scheme can give rise to RICO liability, when that scheme is short-lived and directed at a limited number of people," this circuit will require "some further indication that the defendant's fraudulent activities are likely to continue." *Kehr, supra,* 926 F.2d at 1413. See also: *H.J. Inc., supra,* 109 S.Ct. at 2906 (Claims that the racketeering predicates "occurred with some frequency over at least a 6–year period ... may be sufficient to satisfy the continuity requirement.") and *Shearin v. E.F. Hutton Group, Inc.,* 885 F.2d 1162, 1166 (3d Cir. 1989) (Scheme lasted a minimum of two years and involved three corporations and an illicit plan to defraud investors and to mislead honest employees).

■ Turning to the case before us, we start with a review of the salient facts. All predicate acts which plaintiffs allege relate to activities carried out in connection with the trust. The trust was terminated in October, 1987 and was in existence for less than a year and one-half. It has not been reinstated, and there are no plans, immediate or future, for its reinstatement. The only predicate acts plaintiffs allege are those purportedly committed in connection with administration of the trust. Thus, there is not even the remotest possibility of continuing racketeering activity[7] and, accordingly, no basis for a RICO claim. See,

***

7. Defendants challenge the viability of plaintiffs' RICO claim on a host of other grounds as well—failure to identify the RICO "enterprise" involved; failure to demonstrate that the "enterprise" involved is a "separate economic entity distinct from the pattern of racketeering activities engaged in by Defendants ...;" failure to plead involvement of the enterprise in interstate

e.g., *Kehr, supra; Banks, supra,* and *Insurance Consultants of America,* 746 F.Supp. 390, 415 (D.N.J.1990) (Private placement of securities by insurance company over a short period of time insufficient to constitute a threat of continuous harm—"While the Private Offering affected numerous individuals and consisted of numerous potential predicate acts, the time period over which the RICO Defendants are alleged to have participated in the Private Offering spans a closed period: from the issuance of the PPM on 20 April 1986 to the 11 August 1986 Closing Date. These few months are an insufficient period of time to support the claim that the Pre–Investment Conduct of the RICO Defendants constituted a substantial period of time.... Drawing an inference of continuing harm is not possible because the RICO Defendants were not engaged in the sale of securities beyond the Closing Date.")

### C. *Plaintiffs' Standing to Sue Under ERISA*

■ Plaintiffs' second basis for invoking federal jurisdiction is ERISA. Defen-

commerce; failure to plead specific acts which constitute "racketeering activities" as defined in the 18 U.S.C. § 1961(1); failure to adduce any evidence supporting allegations that defendants were involved in wire fraud or mail fraud; failure to adduce any evidence of fraudulent activities of any sort; and finally, failure to demonstrate that they have been damaged in their business or property by reason of defendants' alleged RICO violations.

All of these arguments are well taken. We agree with defendants' stated position on each, although we perceive no need to review each independently, since plaintiffs' failure to satisfy the continuity requirement, alone, mandates dismissal of their RICO claim.

**8.** Section 1132(e)(1) vests exclusive jurisdiction in the federal district courts to hear civil actions filed under ERISA. 29 U.S.C. § 1132(e)(1).

**9.** Section 1132(a) provides:

A civil action may be brought ... by a participant or beneficiary..to recover benefits due him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.
29 U.S.C. § 1132(a).

**10.** Although the Ninth Circuit has interpreted this section differently, see, e.g., *Fentron Indus.*

dants argue that plaintiffs' reliance on ERISA to confer subject matter jurisdiction[8] fails for two reasons: (1) the plaintiffs are employers under the plan, and employers do not have standing to sue under ERISA; and (2) despite extensive discovery, plaintiffs have failed to adduce any proof that defendants violated any provisions of ERISA. Because we find that defendants' first argument is correct, we do not reach the second.

Defendants' first argument centers on section 1132(a),[9] which lists the parties who have standing to bring an action for alleged ERISA violations. "The express grant of federal jurisdiction in ERISA is limited to suits brought by" the parties listed in section 1132(a).[10] *Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 21, 103 S.Ct. 2841, 2852, 77 L.Ed.2d 420 (1983).[11] It "clearly restricts the categories of individuals empowered to bring a civil action to four groups of persons, none of which includes employers." [12] *Crown Cork & Seal v. Teamsters Pension Fund,* 549 F.Supp. 307 (E.D.Pa.

*v. National Shopmen Pension Fund,* 674 F.2d 1300, 1304 (9th Cir.1982), and has ruled that it does confer standing to sue on certain "non-enumerated" parties, it stands alone in endorsing that interpretation, and its stance on this issue has been widely criticized.

In addition, subsequent Ninth Circuit decisions have circumscribed the scope of this ruling. See, e.g., *Associated Builders & Contractors v. Carpenters Vacation & Holiday Trust Fund,* 700 F.2d 1269, 1278 (9th Cir.1983) (limiting *Fentron* to confer standing only where "specific and personal" injuries have been alleged), *cert. denied,* 464 U.S. 825, 104 S.Ct. 94, 78 L.Ed.2d 101 (1983).

**11.** Plaintiffs cannot avail themselves of the Multiemployer Amendment Special Provisions which allow employers to file actions under ERISA. 29 U.S.C. § 1451(c). Application of those provisions is limited to plans mandated by collective bargaining agreements.

**12.** ERISA defines a "participant" as:

... any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer....
29 U.S.C. § 1002(7).

1983), *aff'd* 720 F.2d 661 (3d Cir.1983) (employer could not assert a cause of action.) See also: *Grand Union Co. v. Food Employers Labor Relations Assoc.*, 808 F.2d 66 (D.C.Cir.1987) (employer not eligible to sue) and *Pressroom Unions–Printers League Income Security Fund v. Continental Assurance Co.*, 700 F.2d 889, 892 (2d Cir.1983) (Congress did not "intend ... to grant subject matter jurisdiction over suits by employers, funds or other parties not listed in § 1132[a]"), *cert. denied*, 464 U.S. 845, 104 S.Ct. 148, 78 L.Ed.2d 138 (1983).[13]

■ That is not to say, however, that employers never have the ability to bring an ERISA action. If they serve also as fiduciaries, they have standing to sue in that capacity. See, e.g. *Giardono v. Jones*, 867 F.2d 409, 413 (7th Cir.1989) (employer's right to sue limited to actions brought in a fiduciary capacity).

■ Plaintiffs argue that they qualify as named fiduciaries and that this status confers standing. ERISA defines a fiduciary as any person [14] who exercises

... any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets ... or ... has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 1105(c)(1)(B) of this title.

29 U.S.C. § 1002(21)(A). A "named fiduciary" is defined separately as:

... a fiduciary who is named in the plan instrument, or who, pursuant to a procedure specified in the plan, is identified as

A beneficiary is defined as:
... a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder.
29 U.S.C. § 1002(8).

**13.** Compare: *Gruber v. Hubbard Bert Karle Weber, Inc.*, 608 F.Supp. 392, 394 (W.D.Pa.1985) (Court exercised pendent jurisdiction over claims asserted by employers and employees in the same action, distinguishing *Crown Cork, supra* and noting as significant that the claims

a fiduciary (A) by a person who is an employer or employee organization with respect to the plan or (B) by such an employer and such an employee organization acting jointly.

29 U.S.C. § 1102(a)(2). These definitions are broadly construed to include all persons having authority and responsibility over the plan, regardless of their formal title. See: *Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 47, 107 S.Ct. 1549, 1552–53, 95 L.Ed.2d 39 (1987) and *Donovan v. Mercer*, 747 F.2d 304, 308 (5th Cir.1984).

As support for their contention that they are named fiduciaries, plaintiffs rely on Article 7, para. 7.2 of the trust agreement which confers on participating employers authority to amend the trust. (The adoption agreements executed by participating employers on April 1, 1988 contain a similar provision.)

An employer with the authority to alter the terms of the plan and to administer the trust may qualify as a fiduciary. *United States Steel Corp. v. Commonwealth of Pennsylvania Human Relations Commission*, 669 F.2d 124, 126 (3d Cir.1982). See also: *Ed Miniat, Inc. v. Globe Life Insurance Group, Inc.*, 805 F.2d 732, 736 (7th Cir.1986) ("[C]orporate plaintiffs, by virtue of their power to amend the plan, had the power to select a new insurance company and a new administrator to administer the Plan," and "Thus, at least for some purposes, they may be fiduciaries ... [with] standing to bring this suit."); *Leigh v. Engle*, 727 F.2d 113, 133 (7th Cir.1984), *cert. denied*, 489 U.S. 1078, 109 S.Ct. 1528, 103 L.Ed.2d 833 (an individual and a corporation who had the power to appoint and remove the trust administrators were fiduciaries for that purpose.) and *Great Lakes*

asserted by the employers did not risk impairing the integrity of the fund and appeared to "fall within the zone of interests sought to be protected by the statute which they invoke.")

**14.** Throughout this memorandum, we use the term "person" in the broad sense defined by ERISA, as "an individual, partnership, joint venture, corporation, mutual company, joint-stock company, trust, estate, unincorporated organization, association or employe organization." 29 U.S.C. § 1002(9).

*Steel v. Deggendorf,* 716 F.2d 1101 (6th Cir.1983) (ERISA action should not be dismissed for lack of standing because employer adequately alleged its status as fiduciary").

However, we reject on two grounds plaintiffs' argument that they qualify as fiduciaries. The first is that plaintiffs were ten members of a group comprised of sixty-seven employers. A majority vote, taken with a quorum present, is required to alter or amend the trust agreement. As a minority of ten, the plaintiffs did not, acting alone, or even acting collectively, have the ability to alter the trust agreement. Without the cooperation and acquiescence of their co-participants, they alone were powerless.

Moreover, the participating employers as a body delegated authority to oversee and carry out the day-to-day business to Hartman and NEP. If an employer has effectively delegated its fiduciary responsibilities and concomitant liabilities to another entity, then it cannot invoke its nominal fiduciary status to assert a right to sue under ERISA. *Coleman Clinic, Ltd. v. Massachusetts Mutual Life Insurance Co.,* 698 F.Supp. 740, 743 (C.D.Ill.1988) and *Provident Life & Accident Insurance Co. v. Waller,* 906 F.2d 985 (4th Cir.1990).

Plaintiffs' ERISA claim will, therefore, be dismissed for lack of standing.

#### D. *Plaintiffs' pendent state claims*

There remain before the court only plaintiffs' pendent state claims. It is most appropriate that those claims be decided before the state court where the original action was filed by the defendants seeking to compel payment of the withdrawal assessments. We will, therefore, dismiss this action so that the remaining claims may be pursued in state court. *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966).