**LEHIGHTON AREA SCHOOL DISTRICT, Plaintiff,**

v.

**Kay C. GILBERT, Judith Steigerwalt, Commercial Insurance Company of Newark and American Manufacturers Mutual Insurance Company, Defendants.**

**No. 3:CV–91–1189.**

United States District Court, M.D. Pennsylvania.

Jan. 6, 1992.

William G. Schwab, Lehighton, Pa., for plaintiff.

Sal Cognetti, Jr., Foley, Cognetti & Cowley, Scranton, Pa., for Kay C. Gilbert.

William F. Thomson, Jr., Fairless Hills, Pa., for American Manufacturers Mut. Ins. Co.

## MEMORANDUM

McCLURE, District Judge.

### BACKGROUND

On September 11, 1991, plaintiff Lehighton Area School District ("Lehighton") filed this complaint under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.* In addition to RICO claims, Lehighton has asserted claims for breach of contract, negligence, and fraud and conversion alleging jurisdiction under the doctrine of pendent jurisdiction. In its complaint, Lehighton alleges that defendants Kay C. Gilbert, acting as Tax Collector of Mahoning Township, and Judith Steigerwalt, Gilbert's unofficial assistant, misappropriated tax funds they had collected between 1985 and 1990 in the amount of $36,299.12. Lehighton also alleges that a deficiency has been revealed for the tax year 1990–1991. However the amount of this deficit has not yet been determined.

Although Gilbert was re-elected for a third term as Tax Collector for Mahoning Township to begin on January 1, 1990, she resigned from office before she could begin her third term. Significantly, while she cited "health reasons" in her letter of resignation, her resignation coincided with the unveiling of deficiencies through a routine audit. Following her resignation, Gilbert paid $36,299.12, the amount of the deficiency from 1985 to 1990, to Lehighton. Based on alleged RICO violations, Lehighton requests, inter alia, treble damages for the tax funds improperly withheld by Gilbert and Steigerwalt offset by the $36,299.12 which has already been paid.

The claims against defendants Commercial Insurance Company of Newark ("Commercial") and American Manufacturers Mutual Insurance Company ("American") are limited to breach of contract. Lehighton alleges that Commercial and American breached their respective contracts to act as surety under a public official's bond for the faithful performance of Gilbert in her official capacity as tax collector. Commercial's bond covered Gilbert's term of office beginning on January 6, 1986, and ending on the first Monday in January of 1990. American's bond covered the term of office beginning on January 1, 1990, and ending on January 1, 1994. Lehighton alleges that both Commercial and American have failed to reimburse it, in accordance with the respective surety bonds, for damages it has sustained as a result of Gilbert's conduct.

On October 8, 1991, Gilbert filed a motion to dismiss the complaint for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6). On November 18, 1991, American filed a motion to dismiss the complaint for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1), and for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6).

### GILBERT'S MOTION TO DISMISS

Gilbert contends that the plaintiff has failed to assert a civil RICO claim against her because 1) the complaint fails to allege properly the threat of continuing racketeering activity, which is a requisite for showing a "pattern" of racketeering activity, and 2) the plaintiff lacks standing to sue under RICO because it has been compensated in full for the alleged violations.

### 12(b)(6) STANDARD

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) admits the well pleaded allegations of the complaint, but denies their legal sufficiency. *Hospital Building Co. v. Trustees of the Rex Hospital*, 425 U.S. 738,

740, 96 S.Ct. 1848, 1850, 48 L.Ed.2d 338 (1976). "It is the settled rule that 'a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Leone v. Aetna Cas. & Sur. Co.*, 599 F.2d 566, 567 (3rd Cir.1979), quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). The complaint must be read in a light most favorable to the plaintiff with every doubt resolved in plaintiff's favor. *In re Arthur Treacher's Franchisee Litigation*, 92 F.R.D. 398, 422 (E.D.Pa.1981).

### PATTERN OF RACKETEERING

■ Gilbert contends that Lehighton has failed to allege a pattern of racketeering because there is no ongoing criminal activity on the part of the defendants, nor is there the threat of further misappropriation of funds. This is based on the fact that Gilbert has resigned from office and, therefore, is incapable of continuing the alleged illegal activity. This argument, however, misinterprets the relevant law regarding the continuity requirement.

As the Senate Report explained: "The target of [RICO] is thus not sporadic activity. The infiltration of legitimate business normally requires more than one "racketeering activity" and the threat of continuing activity to be effective. It is this factor of *continuity plus relationship* which combines to produce a pattern." S.Rep. 91–617, p. 158 (1969) (emphasis added).

*Sedima, S.P.R.L. v. Imrex Company*, 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346, 358 n. 14 (1985).

The Third Circuit has construed the "continuity plus relationship" requirement as calling for an inquiry into the extent of racketeering activity on a case by case basis. *Barticheck v. Fidelity Union Bank/First Nat. Bank*, 832 F.2d 36, 39 (3d Cir.1987). The factors relevant to this inquiry are the "number of unlawful acts, the length of time over which the acts were committed, the similarity of the acts, the number of victims, the number of perpetrators, and the character of the unlawful activity." *Id.* at 39.

The target of the RICO statute, as its name suggests, is criminal activity that, because of its organization, duration, and objectives poses, or during its existence posed, a threat of a series of injuries over a significant period of time. *Marshall–Silver Constr. Co. v. Mendel*, 835 F.2d 63, 66–67 (3d Cir.1987).

As even the plaintiff argues, it is "long-term racketeering activity, *or the threat thereof*," which is the touchstone of the continuity requirement. *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 241–42, 109 S.Ct. 2893, 2901–02, 106 L.Ed.2d 195, 209 (1989); *Banks v. Wolk*, 918 F.2d 418, 421–22 (3d Cir.1990).

In the instant case, the complaint alleges a multitude of illegal acts committed by Gilbert over a five-year period affecting the monies of three separate taxing authorities. In addition, in each successive year the amount of money pilfered by Gilbert grew significantly greater: $987.82 in 1985–86; $2,599.62 in 1986–87; $7,400.82 in 1987–88; $10,769.76 in 1988–89; and $14,-541.10 in 1989–90. There is every indication that had the misappropriation of tax funds not been uncovered by virtue of an audit, she would presently be engaged in the alleged racketeering activity.

■ Gilbert should not stand to escape liability under RICO by virtue of the fact that her scheme was discovered. Unless applied retrospectively, the test for the threat of continuing criminal activity is pointless. Indeed, there is absolutely no reason to believe that Gilbert would have discontinued her racketeering activity in the next four years, the duration of her third term, and there is every indication that she would have continued the activity for as long as she held the office of tax collector.

### STANDING

Gilbert maintains that Lehighton lacks the requisite standing to sue under RICO because it has been compensated in full for the amount of the tax deficiency. This

refers to the $36,299.12 which has been paid by Gilbert to Lehighton. Significantly, Gilbert cites no case law in support of her argument. In any event, this argument fails for two reasons.

First, plaintiff alleges that Gilbert's racketeering activity included the misappropriation of tax funds in 1990–1991, and that the amount of the deficiency for this period has not yet been determined. The $36,299.12 paid by Gilbert was to make restitution for the deficiency from 1985 to 1990, and did not include the alleged deficiency for 1990–91. Therefore, contrary to Gilbert's assertion, Lehighton has not been compensated in full for the alleged RICO violations.

■ Second, the fact that Gilbert has made restitution of any kind, in and of itself, has absolutely no effect on plaintiff's right to sue under RICO. Gilbert does not claim that Lehighton waived any rights in exchange for the payment. Instead, she contends that plaintiff's sole reason for suing under RICO is the prospect of treble damages and attorney's fees. Even if the court were to agree with this contention, Congress has seen fit to provide the remedy of treble damages and attorney's fees in RICO cases, and the plaintiff is well within its rights in seeking this remedy.

Gilbert has requested, in the alternative, a more definite statement of the claims asserted against her. However, the complaint, which contains one hundred and ninety-four numbered paragraphs detailing the alleged scheme of Gilbert and Steigerwalt, is sufficient to put Gilbert on notice of the allegations against her and to allow her to frame an intelligent responsive pleading.

## AMERICAN'S MOTION TO DISMISS

■ American argues that this court lacks subject matter jurisdiction of the breach of contract claim asserted against it by Lehighton. American contends that contrary to plaintiff's assertion this court should not exercise pendent jurisdiction over the breach of contract claim.

## PENDENT JURISDICTION

The doctrines of pendent and ancillary jurisdiction were codified by the Judicial Improvements Act of 1990 as "supplemental jurisdiction". "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Claims form part of the same case or controversy for jurisdictional purposes if, "the relationship between [the federal] claim and the state claim permits the conclusion that the entire action before that court comprises but one constitutional 'case'." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218, 227 (1966).

> The state and federal claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues there is *power* in federal courts to hear the whole.

*Id.* at 725, 86 S.Ct. at 1138, 16 L.Ed.2d at 228 (emphasis in original).

In the instant case, Lehighton attempts to join its RICO claims against Gilbert with its claims against American and Commercial for breach of their respective contracts to act as surety under a public official's bond for the faithful performance of Gilbert in her official capacity as tax collector. These claims, however, are not part of the same case or controversy. A review of the pleadings reveals that both American and Commercial do not specifically contest the actions of Gilbert, but the extent of the coverage under the surety agreements.

American maintains that no payment has been made because Lehighton has neither submitted a complete audit nor has it quantified its loss for the 1990–91 tax year, the period covered by its surety agreement. In

its answer to the complaint, Commercial asserts the affirmative defense of recoupment based on the payments to Lehighton by Gilbert in the amount of $36,299.12 for the tax deficit from 1985 and 1990, the period covered by its surety agreement.

Based on the foregoing, it is clear that the RICO claims asserted against Gilbert and the claims based on the surety contracts are not part of the same case or controversy. Consequently, American's motion to dismiss for lack of subject matter jurisdiction will be granted and Lehighton will be required to show cause as to why its claims against Commercial should not be dismissed for like reasons.