**John VILD, Plaintiff-Appellant, Cross-Appellee,**

v.

**Dominic A. VISCONSI; Patricia Sattenfield; Sea/Mountain Resorts, Inc.; C. W. Sattenfield; Gerald Plonski; John Does; Defendants-Appellees, Cross-Appellants.**

Nos. 90-4048, 90-4088.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 4, 1991.

Decided Feb. 10, 1992.

Rehearing and Rehearing In Banc Denied March 27, 1992.

Gregory T. Stralka (argued and briefed), Cleveland, Ohio, for John Vild.

Mark I. Wachter (argued and briefed), Paul A. Caimi, Mays, Karberg & Wachter, Cleveland, Ohio, for Dominic A. Visconsi, Patricia Sattenfield, Sea/Mountain Resorts, Inc., C. W. Sattenfield, Gerald Plonski, John Does (Nos. 1–10).

Before GUY, Circuit Judge,
WELLFORD, Senior Circuit Judge, and
CHURCHILL *, Senior District Judge.

WELLFORD, Senior Circuit Judge.

John Vild, the plaintiff, appeals from the district court's denial of his Fed.R.Civ.P. 59(e) motion to alter or amend an earlier judgment dismissing his RICO[1] complaint and Fed.R.Civ.P. 15(a) motion to amend his RICO complaint. The defendants, various persons involved in a series of real estate enterprises, cross-appeal from the district court's denial of their Fed.R.Civ.P. 11 motion for sanctions against the plaintiff. Put simply, Vild tries to convince us that he has properly stated a RICO claim in his complaint or proposed amended complaint, while the defendants maintain that he failed to state a claim, and that his failure should bring about sanctions. We find that the district court did not err when it denied the plaintiff's motions under Rules 15(a) and 59(e), and therefore, we AFFIRM that portion of the decision. Although we do not rule on the merits of the sanctions issue, we find it appropriate to REMAND this issue for clarification as to the basis for the district court's denial of sanctions.

---

* The Honorable James P. Churchill, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

1. Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.*

## I. BACKGROUND

Plaintiff, an Ohio citizen, sued Dominic Visconsi of Ohio, C.W. and Patricia Sattenfield of Florida, Gerald Plonski of Ohio, and ten other unnamed individuals and several business entities, for alleged violations of RICO, common law fraud, intentional interference with business relationships, conversion, negligence and breach of contract. Vild's allegations arose from a failed scheme in which he was to market interests in the Longboat Bay Club (Club), a real estate resort venture.

In addition to the original complaint, the plaintiff filed, or attempted to file, three amended complaints, the details of which are necessary for a complete understanding of the controversy before us. The plaintiff alleged throughout subject matter jurisdiction under RICO and under 28 U.S.C. § 1332 (diversity of citizenship).

The original complaint alleges that in late January, 1989, defendant C.W. Sattenfield, on behalf of the other named defendants, Dominic Visconsi, Patricia Sattenfield, and Gerald Plonski, contacted the plaintiff by telephone to induce him to sign a marketing agreement to sell real estate interests in the Club. Vild contends that the defendants made material misrepresentations regarding the marketing agreement. He maintains in particular that the defendants represented that there was sufficient start-up capital to begin business operations. Allegedly due to these material misrepresentations, Vild complained that he entered into an exclusive marketing agreement and shortly thereafter signed a note for money advanced to him by defendants to initiate the venture. Vild asserts that the defendants encouraged him to establish the business so that they could later force him out and acquire the enterprise for themselves.

From the outset, the arrangement was a failure. Once the plaintiff entered into the business relationship, C.W. Sattenfield telephoned him seeking to change the terms of the marketing agreement and proposing that the defendants receive "kickbacks" on any interests sold to the public. According to Vild, C.W. Sattenfield made threats to him, his family and to ruin his reputation. When Vild did not comply with the proposed changes, the defendants allegedly refused to provide additional inventory and start-up money.[2] The original complaint also alleges that the defendants refused to compensate Vild for sales made by him under the marketing agreement. Plaintiff maintains that these threats, phone calls, and material misrepresentations all constitute predicate acts under RICO because they are violations of mail fraud, wire fraud and extortion statutes as well as the Hobbs Act.

The original complaint also alleges other predicate acts which are separate and distinct from the previously described scheme to defraud and extort the plaintiff. Vild contends that the defendants used, and continue to use, telephones and facsimile machines to solicit customers in Ohio to purchase interests in the Club. According to Vild, these solicitations constitute wire fraud because the defendants' salespersons are not licensed and registered to do business in Ohio. The plaintiff also alleges that the defendants engaged in, and continue to engage in, mail fraud because they used, and continue to use, letters which technically violate several laws and regulations governing direct mail solicitation in Ohio. For instance, the letters do not contain, as required by law, the odds of winning prizes. They also improperly use the word "sweepstake." Vild further complains that the defendants sent similar letters to potential consumers in Indiana in violation of that state's laws. Plaintiff maintains also that the defendants violated Florida law by fraudulently using real estate contracts which did not contain a mandatory ten-day cancellation provision.

Vild amended his original complaint by introducing several additional defendants, Gerald Plonski and ten unnamed individuals, who allegedly also violated the RICO

---

**2.** Defendants provided $20,000 to the plaintiff, but they did not supply additional funds and inventory allegedly promised under an oral agreement. No reference was made to this in the written agreement.

statute. The plaintiff contends that Plonski, his sales agent, refused to pay him money earned from Club sales because of "kickbacks" to the other defendants. The ten unnamed defendants were alleged officers, directors and shareholders of Sea/Mountain Resorts Inc. (Sea Mountain) established by defendants to market real estate interests in Ohio. These added individual defendants also allegedly engaged in the same type of racketeering, wire and mail fraud activities as the other defendants.

The plaintiff also attempted to file a second amended complaint, but the court denied his motion to amend. The second amended complaint alleges several new predicate acts and introduces a host of additional defendants. The new predicate acts center on the allegedly illegal status of another business entity controlled by the defendants. Vild maintains that Longboat Venture Ltd. (Longboat), the owner of the Club, was prohibited from doing business in Ohio and Florida because its general partner, DVB, Inc. (DVB), failed to maintain its legal corporate status and also failed properly to register to do business. The plaintiff maintains that any solicitations by Longboat accordingly constitute wire and mail fraud.

The second amended complaint also alleges that several new RICO defendants were a part of the illegal enterprise. Vild contends that the defendants' law firm and three lawyers representing defendants fraudulently represented DVB's corporate status and its capacity to do business. One defendant lawyer allegedly sent a letter to the state of Ohio which indicated incorrectly that DVB had good standing in Ohio. Another defendant lawyer allegedly made a similar misrepresentation to the Court of Common Pleas of Cuyahoga County stating that Longboat was a valid limited partnership. Plaintiff's contention is that Longboat was not a valid limited partnership because of DVB's status. These misrepresentations were allegedly intentionally made with knowledge that they were false.

Vild moved to file still another amended complaint, but this motion was denied.

The third amended complaint adds very little to the earlier versions. Defendants further committed mail fraud by misrepresenting DVB's status to the State of Florida in order to validate its certificate to do business. The plaintiff also alleges that the defendants committed another RICO predicate act by misrepresenting DVB's status to the State of Ohio during the course of settlement negotiations.

## II. *DISTRICT COURT ACTIONS*

After Vild filed his first amended complaint, the defendants moved to dismiss the action under Fed.R.Civ.P. 12(b)(6) for failure to state a claim and under Fed.R.Civ.P. 9(b) for failure to allege fraud with particularity. While these motions were pending, the plaintiff requested leave to file his second amended complaint which the court denied.

The next day, the district court granted defendants' motion to dismiss for failure to state a RICO claim because Vild did not allege "a pattern of racketeering activity," as defined by *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). The Supreme Court in *H.J., Inc.* held that a plaintiff must allege facts which prove that the predicate acts are related and pose a genuine threat of continuity. *Id.* 109 S.Ct. at 2900. Applying these requirements to Vild's case, the district court concluded that "there exist[ed] no set of facts to show 'continuity.'" The district court stated, "[a]t best, the predicate acts alleged occurred over [sic] period of only a few months, and therefore, cannot be considered to have extended over a 'substantial' period of time." Continuity was also lacking because the plaintiff failed to show that the defendants "threat[ened] ... long-term racketeering activity" or that the predicate acts constituted a "regular way of doing business." In sum, the district court found that "the acts alleged amount[ed] at best to a breach of contract with a single customer."

Without a valid RICO claim, the district court concluded that there was no subject matter jurisdiction. The plaintiff could not

invoke 28 U.S.C. § 1332 diversity jurisdiction because he did not show that "each defendant [was] a citizen of a different State from each plaintiff."

Following the dismissal, Vild filed a motion to alter or amend the judgment under Fed.R.Civ.P. 59(e) and also to amend the complaint once again under Fed.R.Civ.P. 15(a). By a marginal entry, the district judge denied the plaintiff's motion: "After careful consideration of the pleadings, the Court finds that the acts alleged amount to breach of contract. Accordingly, the Motion is denied." The plaintiff now appeals from the district court's action.

Prior to the district court's denial of the plaintiff's motion to alter or amend, the defendants filed a motion for Fed.R.Civ.P. 11 sanctions on the ground that the plaintiff's counsel failed to make an adequate prefiling inquiry into RICO requirements. By use of another marginal entry, the district court denied the defendants' motion. The defendants accordingly cross-appeal.

### III. *STANDARD OF REVIEW*

There appears to be some confusion regarding the proper standard of review of the district court's decision. Instead of appealing from the district court's original dismissal of the complaint under Fed. R.Civ.P. 12(b)(6), the plaintiff appeals from the later order which denied his motion to alter or amend the judgment pursuant to Fed.R.Civ.P. 59(e) and to amend the complaint for a third time under Fed.R.Civ.P. 15(a). Defendants maintain that a limited standard of review should apply, suggesting that the scope of our review is confined to whether the district court committed a "clear error of law." On the other hand, the plaintiff contends that we should apply the more liberal "abuse of discretion" standard because he also appeals from the district court's denial of leave to amend the complaint. *See Janikowski v. Bendix Corp.*, 823 F.2d 945, 951 (6th Cir.1987).

■ We typically review a district court's denial of a party's motion to amend under the abuse of discretion standard. *See id.* When, however, the district court has based its decision on "a legal conclu-sion that the amended pleading would not withstand a motion to dismiss," there is authority that we review such a decision *de novo. Martin v. Associated Truck Lines, Inc.*, 801 F.2d 246, 248 (6th Cir.1986); *see also Dana Corp. v. Blue Cross & Blue Shield*, 900 F.2d 882, 887 (6th Cir.1990). In this case, following *Martin's* mandate, we will review the district court's RICO decision *de novo* to determine whether the district court abused its discretion because the decision was based on the legal conclusion that the third amended complaint did not satisfy RICO's requirements.

■ If the third amended complaint is not sufficient to establish a RICO claim and rectify what the district court deemed to be jurisdictional deficiencies, then there was no error in denying the motion to amend. *See Martin*, 801 F.2d at 248. If, on the other hand, the third amended complaint does sufficiently state a RICO claim, then we must examine with great care the denial of leave to amend. The essence of Vild's appeal is his assertion that the third amended complaint sufficiently stated a RICO claim.

### IV. *RICO'S PATTERN REQUIREMENTS*

#### A. *RELATED ACTIVITIES*

The district court held that the plaintiff failed to satisfy RICO's "pattern of racketeering" requirement. *See Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985). A "pattern of racketeering activity," requires that a plaintiff must prove "at least two acts of racketeering activity, one of which occurred after [October 15, 1970] and the last of which occurred within ten years ... after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5). The Supreme Court has determined that there is more to the pattern requirement than this statutory definition. In addition to proving the prerequisite of two predicate acts, a plaintiff must show both a "relationship between the predicates" and the "threat of continuing activity." *H.J. Inc.*, 109 S.Ct. at

2900. "It is this factor of *continuity plus relationship* which combines to produce a pattern." *Id.* Continuity and relationship constitute two analytically distinct prongs of the pattern requirement. *Id.*

The district court determined that the plaintiff failed to satisfy the continuity prong of the pattern requirement. Although we are prone to agree with the district court that the plaintiff has not alleged a RICO pattern, we reach this conclusion by using a slightly different analysis. The district court did not determine whether the plaintiff fulfilled the relationship prong of the test. We find it necessary to examine the relatedness issue first before arriving at the continuity prong.

The plaintiff may satisfy the relationship requirement if the predicate acts alleged "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* at 2901. This "test is not a cumbersome one for a RICO plaintiff," but it sets forth a requirement for a RICO cause of action nevertheless. *Feinstein v. Resolution Trust Corp.*, 942 F.2d 34 (1st Cir.1991).

■ Here, Vild alleges two types of predicate acts to satisfy RICO's pattern requirement. The first type of conduct involves acts directed at the plaintiff by the defendants. Vild is the alleged victim of fraudulent and unlawful acts which include allegations of mail and wire fraud designed to induce him to enter into the marketing agreement plus allegations of extortion, threats and fraud in the administration of the marketing agreement. These events occurred over the course of a few months. The second type of conduct alleged in the proposed amended complaint involves improprieties by defendants directed at others including ultimate purchasers of real estate interests, the states of Florida, Ohio and Indiana, and an Ohio court. These allegations focus on wire and mail fraud resulting from technical violations of laws regulating direct mail solicitation and marketing, misrepresentations about the status of one of the defendant business entities, and the use of illegal real estate contracts in Florida. The plaintiff maintains that all of these activities, whether directly involving him or others, are related for the purpose of the pattern requirement. We do not agree. Even if the predicates within each of the two types of conduct may be somehow interrelated, the two types of alleged conduct are not related within the meaning of RICO.

Applying the *H.J., Inc.* relationship test, we find that the two types of conduct have distinct and dissimilar "purposes, results, participants, victims, or methods of commission." *H.J., Inc.*, 109 S.Ct. at 2901. According to the plaintiff's third amended complaint, the defendants' conduct directed toward him had two purposes—to induce him to sign the marketing agreement and then to force him out of business. The other alleged conduct was directed at ultimate purchasers of the real estate interests. This conduct, violations of laws governing direct mail solicitation and the use of certain illegal contracts in Florida, had, in our view, separate and unrelated purposes. In the case of the direct mail solicitations, the defendants' purpose was to sell real estate interests to purchasers without the use of middlemen such as the plaintiff and to gain a marketing advantage with persons and entities beside plaintiff. None of this conduct had a similar or related purpose of inducing the plaintiff to make a contract with defendants or forcing the plaintiff out of business.

The two types of conduct also had disparate results. The first line of activities resulted in the plaintiff's association with the defendants in a marketing agreement and the eventual demise of the business venture. The second line of conduct was directed toward ultimate purchasers and resulted in unspecified individuals attending sales meetings and perhaps acquiring real estate interests in the Club, Longboat, or some other venture of defendants.

That the two types of conduct were directed at different victims indicates another critical distinction which suggests to us that the alleged illegal acts were unrelated and dissimilar. The plaintiff was the *only*

*victim* of the threats, extortion and fraud perpetrated with regard to the failed marketing agreement. He alleges no activity directed against anyone in his position. In contrast, ultimate purchasers and the states of Ohio, Florida and Indiana were the alleged victims of the illegal direct mail solicitations and the invalid real estate contracts. The plaintiff was never an ultimate purchaser of real estate interests, and never sought to be a customer or owner of the Club or Longboat. Plaintiff does not come to the court as an innocent purchaser of Florida swampland who was hoodwinked by the fast-talking defendants. He cannot complain about harm to these other persons or any state agency.[3] The plaintiff alleges that the defendants denied him the benefits of a marketing agreement which would, in actuality, have put the plaintiff in the same position as the defendants, vis-a-vis third party purchasers, if the agreement had not been breached. Vild would have been an agent of defendant sellers. The plaintiff sues the defendants because he could not sell real estate interests, as he planned and contracted to do, to ultimate purchasers, the alleged victims of the conduct which the plaintiff now cites as related predicate acts under RICO. We do not hold that a civil RICO plaintiff must necessarily be directly harmed by all the alleged predicate acts, because harm from one enumerated violation may, in certain situations, be sufficiently connected. Our conclusion merely reflects that this plaintiff, under the circumstances of this case, may not use unrelated predicate acts that allegedly may have harmed ultimate purchasers or other third parties not similarly situated to the plaintiff. When Vild complains that he was not allowed to reap the benefits of the injury-causing enterprise, of which he would have been a part, he has failed the relationship test.

■ Plaintiff's third amended complaint and its predecessors also fail to plead fraud with sufficient particularity under Fed.R.Civ.P. 9(b). To satisfy the requirements of this rule, the plaintiff must allege specifically times, places, contents and victims of the underlying fraud. *See New England Data Servs., Inc. v. Becher,* 829 F.2d 286, 292 (1st Cir.1987). Though he has satisfied the pleading requirements with regard to the conduct directed at him, plaintiff has not sufficiently pled other fraudulent conduct (improper direct mailings and illegal land contracts). He has not, for example, pled that defendants had no intention of carrying out sales of land interests to other persons.

■ Our conclusion that the two lines of conduct were unrelated is also bolstered by the different "methods of commission" used by the defendants. The allegations regarding the marketing scheme with Vild involved extortion, threats, wire and mail fraud. The other alleged conduct included only alleged mail and wire fraud in the form of illegal telephone, fax and mail communications under consumer protection laws and misrepresentations concerning DVB's corporate status. The claimed violations are technical in nature and would not necessarily preclude purchasers from enforcing contract rights. A mere allegation that the defendants used wire and mail fraud in two otherwise dissimilar schemes does not, under the circumstances, satisfy the relationship prong of the pattern test. We agree that multiple wire and mail fraud allegations "are perhaps unique among the various sorts of 'pattern of racketeering activity.'" *U.S. Textiles, Inc. v. Anheuser–Busch Co.,* 911 F.2d 1261, 1268 (7th Cir.1990) (citation omitted). The "number of [mail and wire fraud] offenses is only tangentially related to the underlying fraud, and can be a matter of happenstance" in some instances. *Ashland Oil, Inc. v. Arnett,* 875 F.2d 1271, 1278 (7th Cir.1989) (discussing wire and mail fraud in connection to the continuity prong of the pattern requirement). We believe this description of "tangentially related" offenses applies in this case. Though the direct mail solicitations may have been part of a concerted plan, we find that the wire and

---

**3.** The plaintiff's contentions present something akin to a standing problem, though we decline to use that analysis in this case.

mail fraud offenses perpetrated against the plaintiff during the negotiation and administration of the marketing agreement were, at best, "happenstance," and therefore, unrelated to the other alleged conduct committed against ultimate consumers.

That some of the same participants engaged in both lines of conduct does not alter our conclusion that the predicate acts in the two schemes were unrelated. *See Feinstein,* 942 F.2d at 45.

We draw support for our analysis from cases in which other courts have put teeth into the relationship prong of RICO's pattern requirement. *See Feinstein,* 942 F.2d at 44–45; *Hartz v. Friedman,* 919 F.2d 469, 474 (7th Cir.1990) (concluding that the plaintiff did not satisfy the relationship prong of the pattern requirement even though the same victims were involved in both alleged schemes). In *Feinstein,* the plaintiff alleged that the defendants engaged in two separate real estate schemes, one in New York in 1986 and another in Texas in 1988. As predicate acts, the plaintiff alleged that the defendants perpetrated a series of wire fraud offenses. Of the various defendants, only two, Gleason and Foster, were involved in both schemes. The court found:

> We recognize that, as pleaded, the 1986 and 1988 episodes each featured serial transactions that had some common reference points, most notably the victim's identities and the Gleason/Foster axis.[4] Moreover, the purpose of the underlying transactions were at least similar. But notwithstanding these facts, plaintiffs' RICO claim founders on the bald assertion that these two episodes, nearly two years apart in time, hundreds of miles apart in space and involving two largely distinct groups of participants, were somehow pieces of a unitary scheme. We fully agree with the court below that the facts as alleged ... did not implicate any of the other defendants in the same way.

*Id.* at 44–45. As in *Feinstein,* plaintiff has failed to allege facts sufficient to draw the necessary nexus between the two types of conduct perpetrated by the defendants, and Vild constructs a weaker nexus than the plaintiff in *Feinstein.*

We are aware that some cases hold that the relationship test is satisfied by conduct which seems to us to be disconnected or dissimilar. *See e.g., Banks v. Wolk,* 918 F.2d 418 (3rd Cir.1990). In *Banks,* applying a very liberal version of this test, the court determined that the seven episodes were sufficiently related because, among other things, several of the allegations involved breaches of fiduciary duty and attempts to drive down the price of real estate. *Id.* at 425. We construe the relationship prong more narrowly than the Third Circuit did in *Banks.*

■ Three other cases do not conflict with our decision, in our view: *United States v. Busacca,* 936 F.2d 232 (6th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 595 (1991); *United States v. Eufrasio,* 935 F.2d 553 (3rd Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 340, 116 L.Ed.2d 280 (1991); *United States v. Kaplan,* 886 F.2d 536 (2d Cir.1989), *cert. denied,* 493 U.S. 1076, 110 S.Ct. 1127, 107 L.Ed.2d 1033 (1990). In *Eufrasio,* a criminal proceeding, the court held "that separately performed, functionally diverse and directly unrelated predicate acts and offenses will form a pattern under RICO, as long as they all have been undertaken in furtherance of one or another varied purposes of a common organized crime enterprise." *Eufrasio,* 935 F.2d at 566. *Eufrasio* dealt with an organized crime enterprise whose sole reason for existence was to make money by committing illicit predicate acts sometimes involving violence. In a criminal prosecution context, predicate acts committed by organized crime families are necessarily related because they have the same purpose and relationship to the enterprise. *Id.* at 565. The same does not hold true in civil cases in which businesses may have multiple legit-

---

**4.** It should be noted that the court indicated that the allegations against Gleason and Foster were only arguably sufficient to meet the relationship portion of the test, *Feinstein,* 942 F.2d at 45.

The court did not have to address this issue because Gleason and Foster did not move to dismiss the complaint.

imate purposes and the predicate acts are not related to the enterprise in the same way. *Kaplan* and *Busacca* which also involved violent acts, do not alter our analysis because they merely allowed the United States to satisfy the continuity requirement by referencing arguably related external facts beyond the predicate offenses charged in the context of criminal proceedings.

## B. *CONTINUITY*

We do not end our inquiry with the conclusion that the two lines of alleged conduct in this case are not related to one another for civil RICO purposes. We proceed to the second prong of RICO's pattern requirement to determine whether the plaintiff has alleged facts which demonstrate a "threat of continuing activity." *H.J., Inc.*, 109 S.Ct. at 2900. Since the two types of conduct we have described are not related, the plaintiff must prove that either or both of the schemes satisfies the continuity prong on its own, without reference to predicates in the other scheme.

■ Continuity "is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 2902. The plaintiff may prove continuity by showing a series of past related predicates occurring over an extended period of time. A few months period usually is not sufficient. A second means of establishing continuity is to show that the predicates, by their nature, "involve a distinct threat of long-term racketeering activity." *Id.* Though the Court was not able to craft a bright-line test to define further this type of continuity, it provided the often-quoted example of a hoodlum who extorts money from a number of shop owners and threatens to return each month to collect protection money. *Id.* A third way to prove continuity in this case is to allege "predicates [that] are a regular way of conducting defendant's ongoing legitimate business ... or of conducting or participating in an ongoing and legitimate 'RICO enterprise.'" *Id.*

■ As to defendants' conduct directed toward the plaintiff himself, we find no error in the district court's decision holding that the plaintiff did not prove continuity because the improper activities lasted only a short time. The third amended complaint alleges that the first fraudulent conduct in the marketing agreement scheme occurred in January, 1989, and the last acts took place in the summer of the same year. If the allegations are to be taken as true, at most, the defendants threatened and defrauded the plaintiff over the course of about six or seven months. This limited period of time is not adequate to satisfy the closed-ended formulation of continuity. *Cf. Dana Corp.*, 900 F.2d at 887 (continuity requirement satisfied when fraud occurred over the course of seventeen years). Similarly, the plaintiff cannot fulfill the open-ended formulations of the continuity test because he has not alleged facts which, by their nature, demonstrate only a threat of indefinite improper activity, nor has he alleged facts which show that the conduct directed toward him is a normal way of doing business for the defendants. There is no allegation that defendants continued to threaten and defraud him or threatened and defrauded others in similar marketing agreements. As the district court concluded, "the acts alleged amount at best to a breach of contract with a single customer."

■ The plaintiff's allegations regarding the second type of conduct—acts directed toward others including ultimate purchasers and the states of Florida, Ohio and Indiana—also fail to satisfy the continuity prong of the pattern test. These activities simply did not harm, nor threaten to harm, the plaintiff. We conclude that even if these activities by themselves were deemed to satisfy the continuity prong, the plaintiff would still fail to state a RICO pattern. Plaintiff may not complain about conduct which did not harm him under the guise of RICO continuity, unless those improper acts directed toward others are functionally related to the acts which harmed the plaintiff. A pattern of racketeering activity ac-

cordingly is not present in this case.[5]

We are persuaded that only conduct which is essentially related may be used to establish continuity. *See, H.J., Inc.,* 109 S.Ct. at 2902. A civil plaintiff may not use one type of conduct (acts directed at him) to satisfy the relationship test, and then invoke a second type of conduct (unrelated acts directed at others) to fulfill the continuity test absent similar types of conduct and victims who are essentially in the same position. Only predicate acts that are related to each other may be used to satisfy both tests where plaintiff complains essentially that defendants' conduct deprived him of a position as agent for defendants.

A pattern of conduct is an "arrangement or order of things or activity." *Id.* at 2900 (citation omitted). To form a pattern, all predicate actions must have a relationship to one another. The conduct cited by the plaintiff does not form a "pattern" under the general description of *H.J.* because the two types of activities—the fraudulent acts committed against the plaintiff in the context of forming and operating the marketing agreement, and the alleged unrelated fraudulent acts perpetrated against others—do not have an internal connection or arrangement; there is no real nexus between them.

We conclude that the plaintiff has failed to allege facts in his third amended complaint which would remedy the problems in the previous complaints. We conclude, for the reasons stated, that the third amended complaint fails to present facts which would satisfy the relationship and continuity prongs of RICO's pattern of racketeering test.

## V. *DIVERSITY JURISDICTION*

Plaintiff also maintains that subject matter jurisdiction is proper under 28 U.S.C. § 1332. We find no error in the decision that complete diversity as required by *Owen Equipment & Erection Co. v.*

*Kroger,* 437 U.S. 365, 373, 98 S.Ct. 2396, 2402, 57 L.Ed.2d 274 (1978), does not exist because the plaintiff and at least two of the defendants are citizens of Ohio. To counter this fact, the plaintiff cites *Schuckman v. Rubenstein,* 164 F.2d 952 (6th Cir.1947), *cert. denied,* 333 U.S. 875, 68 S.Ct. 905, 92 L.Ed. 1151 (1948), for the proposition that the non-diverse parties, not the complaint, should have been dismissed. We will not entertain this argument because the plaintiff admitted at oral argument that he did not request in the district court that the non-diverse parties be dismissed. We will not consider such arguments when they are not raised below. *See Maczko v. Joyce,* 814 F.2d 308, 310 (6th Cir.), *cert. denied,* 484 U.S. 828, 108 S.Ct. 98, 98 L.Ed.2d 58 (1987). We find no merit to the plaintiff's additional claim that subject matter jurisdiction is proper under *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Pendent jurisdiction does not exist in this case because, as previously discussed, the federal RICO claim has been properly dismissed under Fed. R.Civ.P. 12(b)(6). *See Aschinger v. Columbus Showcase Co.,* 934 F.2d 1402, 1412–13 (6th Cir.1991); *Gaff v. FDIC,* 814 F.2d 311, 319 (6th Cir.1987). The new supplemental jurisdiction statute, 28 U.S.C. § 1367(a), which was intended to codify pendent and ancillary jurisdiction, does not apply to this case because Vild filed his complaint prior to December 10, 1990, the effective date of the statute. *See Miller v. Glanz,* 948 F.2d 1562 (10th Cir.1991).

## VI. *RULE 11 SANCTIONS*

The standard of review for all aspects of a district court's Rule 11 determination is "abuse of discretion." *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990). The defendants argue that Rule 11 sanctions are mandatory when a breach of the duty to make a proper prefiling investigation has occurred. *See Albright v. Upjohn Co.,*

---

**5.** We do not believe that bolstering our analysis of the relationship test by citation to the continuity test violates the Supreme Court's admonition that "[f]or analytic purposes these two constituents of RICO's pattern requirement [relationship and continuity] must be stated separately." *H.J., Inc.,* 109 S.Ct. at 2900.

788 F.2d 1217, 1222 (6th Cir.1986). They reason that the plaintiff's four amended complaints, none of which successfully stated a cause of action under RICO or established subject matter jurisdiction, constituted a violation of the duty to know the applicable law. *See Fleischhauer v. Feltner,* 879 F.2d 1290 (6th Cir.1989), *cert. denied,* 493 U.S. 1074, 110 S.Ct. 1122, 107 L.Ed.2d 1029 (1990). To support their position, the defendants cite *Smith Lumber Co. v. Edidin,* 845 F.2d 750 (7th Cir.1988), a case in which the court of appeals imposed sanctions when the plaintiff failed to allege facts to establish a RICO pattern. In the alternative, the defendants argue that if we will not impose sanctions, then we should remand this issue to the district court so that it can clarify the basis for its decision to deny the defendants' motions.

We do not express any opinion on the merits of the district court's decision to deny the defendants' motions because we believe that a remand is appropriate in this case so that the district judge can specify the rationale for his holding. *See Szabo Food Serv., Inc. v. Canteen Corp.,* 823 F.2d 1073, 1084 (7th Cir.1987), *cert. dismissed,* 485 U.S. 901, 108 S.Ct. 1101, 99 L.Ed.2d 229 (1988) (holding that a reviewing court cannot tell whether the district court abused its discretion absent articulated reasons); *Lieb v. Topstone Indus., Inc.,* 788 F.2d 151, 158 (3d Cir.1986) (holding that remand is appropriate when a district court has failed to specify its reasons for denying a Rule 11 motion).

The district court has not provided a rationale to allow us to review whether it has abused its discretion by denying the defendants' motions. In this case, the defendants filed two separate motions for sanctions—one which was attached to their brief in opposition to the plaintiff's Rule 59(e) motion and a second which was filed one and one-half months later as an independent motion. In a marginal entry, the district court denied the defendants' motion because "[defendants'] [a]ttorney has cited *All Hawaii Tours v. Polynesian Cultural Center,* 116 F.R.D. 645 (D.Hawaii 1987) in his Brief in Opposition to Plaintiff's Motion to Alter or Amend Judgment. However,

*see* 855 F.2d 860 (9th Cir.1988): that decision was reversed on 8/16/88." This annotation appears on the second motion for sanctions, but that motion does not rely on the *All Hawaii Tours* decision. We cannot tell whether the district court examined the motions independently and/or whether there were adequate grounds for awarding sanctions based on the second motion apart from the overruled case.

## VII.  CONCLUSION

The district court did not abuse its discretion by denying the plaintiff leave to amend once again. The district court was not in error in concluding that none of the complaints established a RICO claim, and it did not err when it denied the plaintiff's motion under Fed.R.Civ.P. 59(e) to alter or amend its earlier 12(b)(6) judgment. We AFFIRM the district court's decision on the RICO and jurisdictional issues. With regard to the Rule 11 question, we REMAND the decision to the district court so that it can clarify the basis for its decision.

RALPH B. GUY, Jr., Circuit Judge, dissenting.

The court concludes that the continuity requirement is not met because the defendants' allegedly fraudulent marketing practices are not related to the conduct involving Vild. Since I believe the two types of alleged conduct are sufficiently related to constitute a pattern of racketeering activity, I respectfully dissent.

The Supreme Court has held that predicate acts are related if they have "the same or similar purposes, results, participants, victims, *or* methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 240, 109 S.Ct. 2893, 2901, 106 L.Ed.2d 195 (1989) (emphasis added). The use of the disjunctive indicates that the relatedness requirement is met if the predicate acts are the same or similar in any of the enumerated ways.

The two types of predicate acts alleged in Vild's complaint meet this broad test of

relatedness because the two schemes have the same participants. This fact distinguishes this case from *Feinstein v. Resolution Trust Corp.*, 942 F.2d 34 (1st Cir. 1991). In *Feinstein*, the court held that the two predicate schemes were unrelated as to most of the defendants because only two of the defendants participated in both schemes. *Id.* at 45. However, the court stated that the two schemes were "arguably sufficient to show relatedness with regard to the actions of common participants...." *Id.*

Since both sets of Vild's allegations involve the same participants, I would find that his complaint meets the relatedness requirement. Since Vild alleges that the defendants have fraudulently marketed the condominiums to investors for several years, I would also find that the continuity requirement is met. I would therefore reverse the district court's dismissal of Vild's RICO count.