46 F.3d 1131
 RICO Bus.Disp.Guide 8745
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
SOUTHAMPTON ASSOCIATES, L.P., Plaintiff/Counter-Defendant/Appellant,
v.
K. JESS, INC., Defendant/Counter-Claimant/Appellee,
v.
Heiner CROMER; Michael Cromer, Counter-Defendants.
 No. 93-1616.
 United States Court of Appeals, Sixth Circuit.
 Jan. 23, 1995.
 
 Before: GUY and BATCHELDER, Circuit Judges, and McCALLA, District Judge.*
 PER CURIAM.
 
 
 1
 The defendants appeal a default judgment, jury verdicts, and damages awards entered against them in this RICO and state law fraud action based on mail and wire fraud. For the reasons that follow, we affirm in part and reverse in part.
 
 
 2
 * Southampton Associates is a limited partnership in the State of New York, owned in three equal shares by limited partners Maria Cromer and MCM Moderne Creation Muenchen Reisegepack, GmbH (MCM Germany), and general partner Michael Cromer Ltd. MCM Germany is a German corporation owned by Michael Cromer, his wife, and their daughter. Michael Cromer Ltd. is a Delaware corporation whose stock is owned entirely by Dr. Heiner Cromer, Michael Cromer's brother; Heiner Cromer is president and CEO of Michael Cromer Ltd. Michael Cromer Ltd. was responsible for the daily operations of Southampton Associates, which was a franchisor in the United States for merchandise bearing the MCM trademark. Karen Jess, Inc. (Jess) was a franchisee of Southampton.
 
 
 3
 This action arose out of the dealings between Jess and Southampton that resulted in the Jess franchise agreement and the eventual demise of that franchise. Jess claims that Michael Cromer, Heiner Cromer and Southampton violated 18 U.S.C. Secs. 1962(a) and (c) by engaging in mail and wire fraud to induce her to enter into the franchise agreement, pay the franchise fee, and develop the business, and then to drive her out of business in order that they might obtain her franchise store at a depressed price (the RICO claims).[1] Jess eventually amended her complaint to include a state law fraud claim against Heiner Cromer. The district court granted a default judgment against Michael Cromer on the RICO claims, denied Michael Cromer's motions challenging that judgment, and denied the other defendants' untimely motion for summary judgment. The case against Heiner Cromer and Southampton was tried to a jury, which returned a verdict in Jess's favor on all claims. The district court then entered judgment, including damages, against the defendants, and also confirmed an arbitration award which, without opinion, found that Southampton had breached its franchise agreement with Jess. The defendants' motion for a new trial was denied, and this appeal followed.
 
 
 4
 Defendants Southampton and Heiner Cromer claim on appeal that the jury's verdict on the RICO claims must be reversed because (1) Jess failed to prove an injury from the investment of racketeering income, which is an essential element of a Sec. 1962(a) violation, and (2) Jess failed to prove a RICO "enterprise" and "pattern of racketeering activity." These defendants also claim that the district court erroneously permitted testimony about the terms of the franchise agreement in violation of the parol evidence rule. Defendant Heiner Cromer further claims that the verdict on common law fraud must be reversed because Jess failed to prove fraudulent conduct engaged in by Heiner Cromer personally and because Jess failed to prove the elements of fraud by clear and convincing evidence. Michael Cromer claims that the default judgment against him on the RICO claims must be reversed.
 
 II The RICO claims
 
 5
 Jess correctly points out that in this appeal, the defendants challenge the jury's verdict under Sec. 1962(a) solely on the ground that Jess failed to prove an injury flowing from the use or investment of money derived from racketeering activities. Jess is also correct that Southampton has waived any challenge in this regard by failing to request an appropriate jury instruction. We think, however, that it is unnecessary to reach this issue, because, for the reasons which we shall discuss in relation to the assignment of error on the Sec. 1962(c) claim, Jess failed to plead or prove a "pattern of racketeering activity," which is a necessary element of a Sec. 1962(a) claim as well.
 
 
 6
 RICO renders criminally and civilly liable "any person" who uses or invests income derived "from a pattern of racketeering activity" to acquire an interest in or to operate an enterprise engaged in interstate commerce, Sec. 1962(a); ... [or] who, being employed by or associated with such an enterprise, conducts or participates in the conduct of its affairs "through a pattern of racketeering activity," Sec. 1962(c)....
 
 
 7
 H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 232 (1989). "Racketeering activity" is defined in 18 U.S.C. Sec. 1961(1) to include a host of activities indictable under federal and state law. Among the most common predicate offenses upon which RICO claims are based are mail fraud and wire fraud, the predicate offenses claimed by Jess in this case. To prevail on a RICO claim, a plaintiff must plead and prove, inter alia, that the defendant committed at least two predicate offenses during the requisite time period and that the commission of these predicate offenses constituted a pattern of racketeering activity.
 
 
 8
 Jess claims that Southampton and the Cromers utilized mail and wire fraud in furtherance of schemes to induce Jess and other franchisees to enter into franchise agreements to sell MCM products at retail in territories that the defendants promised would be exclusive. Jess further claims that these defendants schemed to induce Jess and other franchisees to expend large sums of money to develop their franchises and then schemed to drive Jess and other franchisees out of business by distributing the MCM products through department stores in the franchisees' territories and by requiring the franchisees to accept in inventory large quantities of products which were difficult to sell, while depriving them of the products which sold easily. At trial, Jess presented evidence of both mail and wire communications relative to the initial discussions and negotiations between Jess and Southampton leading to the Jess franchise agreement, as well as mail and wire communications relative to activities of the defendants after that franchise agreement was finalized.
 
 
 9
 It is not enough for Jess to plead and prove that the defendants engaged in fraud. It is not even enough to plead and prove that the defendants engaged in mail or wire fraud. Rather, Jess must plead and prove that the defendants engaged in mail or wire fraud and that those acts of mail or wire fraud constituted a pattern of racketeering activity as contemplated by the statute and delineated by the courts. This is an issue of law, and we review the proceedings in the district court de novo.
 
 
 10
 We conclude first that Jess did not adequately plead and the evidence at trial was insufficient to prove the elements of mail or wire fraud relative to any franchisees other than Jess. The complaint wholly fails to plead facts which, if true, would constitute mail or wire fraud against other franchisees. And at best, the evidence demonstrates that the defendants violated the terms of the franchise agreements. It does not establish fraud in the inducement, the linchpin of Jess's claim, or any other fraud using the mail or the wires.
 
 
 11
 In determining whether the defendants engaged in a "pattern of racketeering," we may therefore consider only the predicate acts against Jess. A single scheme may constitute a RICO pattern, but the scheme must independently satisfy the relatedness and continuity requirements. H.J. Inc., 492 U.S. at 240-41 (To prove a pattern of racketeering activity a plaintiff must show that the racketeering predicates are related and that they amount to or pose a threat of continued criminal activity.). For purposes of this appeal, we assume that Jess has satisfied the requirement of relatedness.
 
 
 12
 We conclude that Jess has not satisfied the requirement of continuity. The scheme to defraud Jess through the use of the mails and the wires alleged in the complaint, and the evidence of that scheme produced at trial simply do not constitute either the closed period of repeated conduct or the kind of past conduct that by its nature projects into the future with a threat of repetition required by H.J. Inc.. See id. at 241; see also, e.g., Vemco, Inc. v. Camardella, 23 F.3d 129, 134 (6th Cir.1994) (finding no continuity where single, 17-month scheme to drive single victim out of business), cert. denied, 115 S.Ct. 579 (1994); Vild v. Visconsi, 956 F.2d 560, 569-70 (6th Cir.) (finding no continuity where single, six-month scheme against single victim), cert. denied, 113 S.Ct. 99 (1992); Thompson v. Paasche, 950 F.2d 306, 311 (6th Cir.1991) (finding no continuity where single scheme involving fraudulent sale of nineteen lots of land); Terry A. Lambert Plumbing, Inc. v. Western Security Bank, 934 F.2d 976, 981 (8th Cir.1991) (finding no continuity where single scheme against single victim involving single loan transaction); Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1412-13, 1417-19 (3d Cir.) (finding no continuity where single, eight-month scheme to drive single victim into bankruptcy), cert. denied, 501 U.S. 1222 (1991); Dana Corp. v. Blue Cross & Blue Shield, 900 F.2d 882, 886-87 (6th Cir.1990) (finding continuity requirement satisfied where single, 17-year scheme against single victim).
 
 
 13
 Blue Cross and Blue Shield v. Kamin, 876 F.2d 543 (6th Cir.1989), cited by Jess, does not alter our conclusion. That case involved a scheme to defraud Blue Cross by submitting claims for unnecessary medical and diagnostic tests. The scheme involved literally hundreds of separate claims for payments. This court said, "As we read the statute, we do not believe that Congress intended that one could insulate himself from the reach of RICO simply by repeatedly bilking the same victim." Id. at 545. Blue Cross is clearly distinguishable from the case at bar.
 
 
 14
 Because Jess has failed to show the continuity required for a RICO pattern, Jess cannot prevail on a claim under either Sec. 1962(a) or (c). Therefore, the verdicts on each of the RICO claims must be reversed. Further, because we have held that Jess failed to plead facts which, if true, constituted a pattern of racketeering activity, we conclude that the district court erred in granting a default judgment against Michael Cromer on the RICO claims, and that judgment must be reversed.
 
 III The Parol Evidence Claim
 
 15
 Defendants Southampton and Heiner Cromer complain that the district court erred in denying their motion in limine and their various objections at trial relative to Karen Jess's testimony offering her interpretation of the "exclusive right" granted by the franchise agreement. Jess maintains that the district court did not rule on the motion in limine and that defendants failed to raise any objection to the testimony at trial. We have searched the record provided to us, including the docket sheet for the case, and find no indication that the trial judge ruled on the motion in limine or that the defendants pursued their objections to this testimony either prior to or during trial. Accordingly, we find that this issue has not been preserved for review.
 
 IV The Common Law Fraud Claim
 
 16
 Heiner Cromer challenges the jury's finding that he committed common law fraud in the inducement against Jess. After careful review of the record, we conclude that this claim is without merit. Cromer's contention that he cannot be held personally responsible for actions taken within the scope of his duties as the president and CEO of Southampton is incorrect as a matter of law. See Mason v. Vogue Knitting Corp., 105 N.W.2d 412 (Mich.1960); see also Kelley ex rel. Mich. Natural Resources Comm'n v. Tiscornia, 827 F.Supp. 1315, 1323 (W.D.Mich.1993); Attorney General v. Ankersen, 385 N.W.2d 658, 673 (Mich.Ct.App.1986) ("It is beyond question that a corporate employee or official is personally liable for all tortious or criminal acts in which he participates, regardless of whether he was acting on his own behalf or on behalf of the corporation."). A reasonable jury could have found all of the elements of fraud under the law of Michigan by clear and convincing evidence.
 
 V The Damages Claim
 
 17
 Because we have concluded that the judgments on the RICO claims must be reversed, it is not necessary for us to review the defendants' assignments of error relative to damages on those claims. With respect to the common law damages claim, it appears from the record that Heiner Cromer neither requested particular jury instructions on damages nor objected to the instructions which were given or the verdict form. "Under such circumstances and in light of Fed.R.Civ.P. 51, we may consider any such error not objected to as waived, except where there is 'plain error' or it 'required action by the reviewing court "in the interests of justice." ' " Chonich v. Wayne County Community College, 973 F.2d 1271, 1275 (6th Cir.1992) (citing Batesole v. Stratford, 505 F.2d 804, 808 (6th Cir.1974) (citation omitted)). Neither the instructions nor the verdict form is plainly erroneous, and this assignment of error as to the common law fraud claim is waived.
 
 VI
 
 18
 Accordingly, we AFFIRM the judgment of the district court on the common law fraud claim against Heiner Cromer, we REVERSE the judgment on the RICO claims against Southampton Associates and Heiner Cromer, and we REVERSE the default judgment entered by the district court against Michael Cromer.
 
 
 
 *
 The Honorable Jon P. McCalla, United States District Judge for the Western District of Tennessee, sitting by designation
 
 
 [1]
 This case was initiated by the district court by Southampton's filing an action for a declaratory judgment that it has not violated the RICO statutes; the declaratory judgment action was prompted by Jess's filing of a demand for arbitration, claiming that MCM was engaged in a scheme to defraud its franchisees and demanding treble damages under RICO. The district court effected a re-alignment of the parties after Jess counterclaimed. Throughout this litigation, Jess has been referred to as the plaintiff and Southampton and the Cromers have been referred to as the defendants. We continue this convention