83 F.3d 422
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
James R. HAZEL, Jr., Plaintiff-Appellant,
v.
GENERAL MOTORS CORPORATION, Defendant-Appellee.
 No. 94-6661.
 United States Court of Appeals, Sixth Circuit.
 April 23, 1996.
 
 Before: NORRIS and MOORE, Circuit Judges; MILES, District Judge.*
 OPINION
 ALAN E. NORRIS, Circuit Judge.
 
 
 1
 Plaintiff, James Hazel, Jr., appeals the district court's dismissal of his complaint. We conclude that plaintiff's negligence and product liability claims were properly deemed to be time-barred but that the district court erred in not addressing plaintiff's fraud claim.
 
 I. Background
 
 2
 As this appeal arises from a dismissal pursuant to Fed.R.Civ.P. 12(b)(6), we accept as true the facts pleaded in the complaint. Gazette v. City of Pontiac, 41 F.3d 1061, 1064 (6th Cir.1994). On April 8, 1988, plaintiff, who was then several weeks shy of his seventeenth birthday, lost control of the pick-up truck he was driving as he passed another vehicle on a two-lane road. The truck overturned and collided with a utility pole, dislodging the gas tank from its mounting brackets, tearing the tank from the filler neck and cap, and allowing gasoline to leak from the tank. Although the crash itself apparently caused plaintiff no physical injury, he sustained second and third degree burns over more than half of his body when the leaking fuel ignited and engulfed the truck in flames while plaintiff attempted to release his seat belt.
 
 
 3
 Following the accident, plaintiff's parents had the truck moved to his aunt's property. His family neither inspected the wreckage nor hired anyone to investigate the cause of the fire. Between two and three months after the accident, plaintiff's family had the wreckage destroyed. Plaintiff did not contact an attorney or otherwise pursue any legal remedy against defendant, General Motors Corporation ("GM"), at that time.
 
 
 4
 The truck was a 1978 Chevrolet C-10, manufactured by GM and purchased in 1985 by plaintiff's parents. This particular model has a "side-saddle" fuel tank design, meaning that the tanks are positioned outside the chassis of the truck. By 1988, this side-saddle design was the subject of at least one hundred state and federal lawsuits, all of which were either dismissed or settled with confidentiality agreements.
 
 
 5
 On November 17, 1992, NBC broadcast an episode of "Dateline" that contained a segment on GM's side-saddle design. That segment focused on the vulnerability of the design, highlighting the potential for fuel leaks and fires upon impact. Upon seeing the television show, plaintiff for the first time considered that his injuries may have been caused by a defectively designed truck.
 
 
 6
 He consulted an attorney two days later and filed his complaint on October 13, 1993. Plaintiff invoked diversity jurisdiction and asserted state-law claims of product liability, negligence, and fraud. The accident occurred in Kentucky, and the parties agree that Kentucky law governs this case.
 
 
 7
 Kentucky has a one-year statute of limitations for personal injury actions. Ky.Rev.Stat.Ann. § 413.140(1)(a) (Baldwin 1995). This limitations period was tolled until plaintiff reached his eighteenth birthday in April of 1989. See Ky.Rev.Stat.Ann. §§ 413.170(1), 2.015 (Baldwin 1995). Plaintiff was therefore required to file a claim for personal injuries by April of 1990. Plaintiff, however, did not file a complaint until three and one-half years later in October of 1993.
 
 
 8
 Anticipating that GM would raise the statute of limitations as a defense, plaintiff devoted much of his complaint to invoking doctrines of fraudulent concealment and equitable estoppel, as well as the "discovery rule," to show that he was not at fault in failing to file his complaint sooner. He argued that because of the nature of the accident and the efforts of GM to prevent the public from learning of the defective fuel system design, he was not put on notice of a potential claim until seeing the episode of "Dateline." Accordingly, he claimed that the limitations period did not begin to run until the airing of that show, thereby giving him until November 17, 1993, to file his complaint.
 
 
 9
 Plaintiff's complaint also alleged a separate count of fraud. The theory underlying this claim appears to be that GM's alleged fraudulent concealment and failure to disclose to the public the danger from the defective design amounted to a fraudulent misrepresentation that caused plaintiff to fail to assert his product liability and negligence claims in time. His damages, therefore, would be the damages that he might have recovered in his personal injury action had GM's fraud not prevented him from filing his complaint before the limitations period expired. Kentucky has a five-year statute of limitations for fraud, and such a claim does not accrue until the plaintiff discovers the fraud. Ky.Rev.Code Ann. § 413.120(11) (Baldwin 1995). The complaint alleges that plaintiff did not learn of the fraud until the airing of the "Dateline" show in November of 1992, so the statute of limitations for the fraud claim would not have run until November of 1997. The precise date that the fraud action may have accrued is not important, however, since given plaintiff's age and Kentucky's tolling statute the claim would be timely even if it had accrued on the date of the accident.
 
 
 10
 GM moved to dismiss and the district court held that plaintiff's personal injury claims were time-barred. The district court concluded that plaintiff was insufficiently diligent, as a matter of law, in pursuing his rights. The district court also held that even if GM had attempted to conceal the design defect in order to prevent the filing of product liability claims, plaintiff's failure to take any steps at all to investigate the accident deprived him of the equitable counters to GM's limitations defense, fraudulent concealment and equitable estoppel.
 
 
 11
 The district court then dismissed the entire complaint with prejudice, although the opinion made no mention of the separate fraud claim. It is unclear whether the district court intended to dismiss the fraud claim or rather was unaware that there was a separate fraud claim in the complaint. This timely appeal follows.
 
 II. Personal Injury Claims
 
 12
 We review de novo the district court's dismissal pursuant to Fed.R.Civ.P. 12(b)(6). See Briggs v. Ohio Elections Comm'n, 61 F.3d 487, 493 (6th Cir.1995). As he did in the district court, plaintiff invokes Kentucky's discovery rule and the doctrines of fraudulent concealment and equitable estoppel to support his position that the product liability and negligence claims are not time-barred. These three concepts address, from different angles, the point in time at which plaintiff should be charged with notice of his claim.
 
 
 13
 Kentucky's discovery rule provides that a cause of action does not accrue until the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, both his injury and the responsible party. See, e.g., Perkins v. Northeastern Log Homes, 808 S.W.2d 809, 818-19 (Ky.1991); Tomlinson v. Siehl, 459 S.W.2d 166, 167 (Ky.1970). This rule is designed to protect the blamelessly ignorant plaintiff from losing the right to recover for an injury during the period in which the injury may remain inherently unknowable to the plaintiff. The typical scenarios for the application of the rule include medical malpractice and latent disease cases. Plaintiff argues that he had no reason to know that the design of the fuel system may have caused his injury until he watched the "Dateline" segment years later and that the cause of action did not accrue until that time.
 
 
 14
 The equitable estoppel doctrine precludes a defendant from asserting the statute of limitations where the defendant has taken actions "calculated to mislead or deceive and to induce inaction by the injured party." Adams v. Ison, 249 S.W.2d 791, 793 (Ky.1952). As with the discovery rule, equitable estoppel applies only where the plaintiff has been reasonably diligent in protecting his legal rights. Burke v. Blair, 349 S.W.2d 836, 838 (Ky.1961). Plaintiff suggests that GM's attempts to minimize negative publicity concerning the side-saddle design, the failure to notify the government and the public of the danger, and the withholding of certain internal documents from GM's testifying engineer amount to sufficiently misleading conduct to give rise to estoppel.
 
 
 15
 The doctrine of fraudulent concealment focuses on conduct by the defendant that is designed to prevent discovery of either the injury or the responsible party. See McCollum v. Sisters of Charity of Nazareth Health Corp., 799 S.W.2d 15, 19-20 (Ky.1990). Where the defendant's conduct prevents further inquiry by the injured party, the statute of limitations will be tolled until the injured party is placed on notice of the claim. Plaintiff argues that GM's requirements of secrecy provisions in settlement agreements with other injured plaintiffs, the purchase by GM of wreckage from accidents involving its trucks, and GM's failure to provide its testifying engineer with certain information potentially unfavorable to GM amount to active efforts to prevent inquiry by injured parties.
 
 
 16
 In assessing all three of these points, the key question is when plaintiff knew or should have known enough facts to trigger the duty to engage in further inquiry. The district court concluded that immediately following the crash, plaintiff knew of both his injury and the instrumentality that caused it. He knew that the collision with the utility pole, while insufficient to cause him physical injury, produced a rupture in the fuel system. He knew that a fuel-fed fire caused his burns. According to the district court, it followed from these facts that under Kentucky's discovery rule, plaintiff's cause of action accrued at the time of the accident. We agree with the district court's analysis.
 
 
 17
 Moreover, the district court noted that plaintiff had been lax in protecting his legal rights. He and his family never examined the charred remains of the truck or asked a mechanic or accident investigator to inspect the wreckage. They did nothing until years later, when they happened by chance to be watching the right television station at the right time. While the wreckage was sitting in his aunt's yard, plaintiff was in a position no different from that of any other potential product liability plaintiff. He knew that he had been hurt in some way by the truck, and it was incumbent upon him to determine through investigation the precise nature of any defect.
 
 
 18
 In light of plaintiff's constructive notice of his claim as of the time of the accident, as well as his lack of diligence in pursuing his claim, his resort to equity to counter the effect of the statute of limitations is unavailing. Under the discovery rule, plaintiff is deemed to have discovered his injury and the responsible party on the date of the accident. Under the theories of equitable estoppel and fraudulent concealment, even if GM did attempt to curb negative publicity there was nothing preventing plaintiff or his family from inspecting the wreckage that remained in his family's custody for months following the crash. In other words, nothing that GM is alleged to have done could prevent plaintiff from learning sufficient facts to be able to bring a timely suit.
 
 
 19
 The district court's dismissal of the product liability and negligence claims was proper.
 
 III. Fraud Claim
 
 20
 Both below and in this court, the parties have focused on whether Kentucky courts would recognize a fraud claim that contains, as its damages element, the loss of another right of action due to the running of the statute of limitations. See Thomas J. Griffin, Annotation, Fraud and Deceit: Liability in Damages for Preventing Bringing of Action Before Its Being Barred by Statute of Limitations, 33 A.L.R.3d 1077 (1970) (discussing this type of fraud claim and suggesting that Kentucky would allow it). Plaintiff maintains that if his personal injury claims are time-barred, then they have been lost because of GM's fraudulent conduct. He argues that because Kentucky recognizes this kind of fraud claim and his complaint adequately pleads a cause of action for fraud, the district court erred in dismissing that claim. GM responds that Kentucky courts either would not permit this type of claim or that if they would, then the shorter one-year limitations period applicable to personal injury actions would apply.
 
 
 21
 The district court did not address the arguments of the parties on this point. Accordingly, we remand this cause to the district court for a determination of (1) whether Kentucky recognizes the fraud claim pleaded by plaintiff and, if so, (2) whether plaintiff's complaint has stated a claim upon which relief can be granted.
 
 IV. Conclusion
 
 22
 For the foregoing reasons, the judgment of the district court is affirmed in part; and this cause is remanded to the district court for further proceedings consistent with this opinion.
 
 
 23
 MILES, Senior District Judge, concurring in part and dissenting in part.
 
 
 24
 Because I believe that the district court properly dismissed Hazel's complaint in its entirety, I respectfully dissent from that portion of the majority's opinion which remands the fraud claim. I do not agree that we should send this case back to the district court for further consideration of that claim. If the question is whether Hazel properly stated a fraud claim, this court is in as good a position as the district court to make this legal ruling. In my view, we should not pass the buck back to the district court.[1]
 
 
 25
 From the outset, GM contended that Hazel's allegations of fraud were not sufficiently specific to meet the requirements of Fed.R.Civ.P. 9 and 12. To satisfy the requirement that fraud be pled with particularity, pursuant to Rule 9(b), "the plaintiff must allege specifically times, places, contents and victims of the underlying fraud." Vild v. Visconsi, 956 F.2d 560, 567 (6th Cir.), cert. denied, 506 U.S. 832 (1992). Hazel's complaint alleges no specific affirmative fraudulent representations. The only representations mentioned in the complaint are two vague references to Hazel's parents' alleged reliance on unspecified GM "advertising" when they purchased the 1978 truck as a used vehicle in 1985. Complaint, ps 5 and 39. This hardly satisfies the requirements of Rule 9(b).
 
 
 26
 The complaint indicates that the fraud claim is based on concealment rather than on affirmative misrepresentations; the claim is in fact identical to Hazel's fraudulent concealment tolling theory asserted with respect to the negligence and product liability claims. As the majority notes, the theory underlying the fraud claim appears to be that GM's alleged fraudulent concealment and failure to disclose to the public the danger from the defective design caused Hazel to fail to timely assert the negligence and product liability claims. According to Hazel, "Kentucky has not yet been asked to rule whether someone like [him] could proceed with his fraud claim if his negligence allegations are time-barred because of the fraud." Appellant's Brief at 32 (emphasis by appellant). However, as the majority also notes, "nothing that GM is alleged to have done could prevent plaintiff from learning sufficient facts to be able to bring a timely suit." Hazel's own lack of due diligence, which is apparent on the face of his complaint,[2] caused his claims to become time-barred. No allegation is made that GM was aware of Hazel's injury and could have formed the intent to conceal from him his cause of action. All of the alleged acts of concealment identified in the complaint relate to information which one could expect to obtain in discovery; none of the acts conceal any information which Hazel would need in order to file a timely complaint. Hazel only needed enough information to file an action; gathering enough information to win it would come later. In sum, Hazel's injury placed him on inquiry notice long before any television journalists did. Because I believe that the district court properly concluded that Kentucky courts would not expand their current doctrine to encompass the facts of this case, and because I see no point in requiring the parties to relitigate the fraud issue on remand, I would affirm the dismissal of the complaint in its entirety.
 
 
 
 *
 The Honorable Wendell A. Miles, United States District Judge for the Western District of Michigan, sitting by designation
 
 
 [1]
 The majority suggests the possibility that the district court might have been unaware that Hazel's complaint contained a separate fraud claim. I disagree. Both parties briefed the question on GM's original motion, and, in his motion to alter or amend the judgment, Hazel specifically asked the court to rule on the fraud claim. I believe that we may rest assured that the district court was aware of the claim; it simply believed that Kentucky courts would not formulate a rule which would allow Hazel to proceed on this theory
 I also note that the district court's comments suggest that Hazel himself might have at one point argued that his allegations of fraud were not intended as a separate claim but merely as a basis for tolling the statute of limitations on the negligence and product liability claims. See Memorandum Opinion at 8-9 ("Plaintiff asks this Court to do what Kentucky courts have not, namely to extend the protection to consumers a step further, to toll the statute of limitations based upon Defendant's duty to inform consumers of a dangerous defect. Defendant's failure to do so, 'Plaintiff asserts, is not the basis of a separate cause of action, rather it tolls the statute" (footnote omitted)). We, of course, do not know what Hazel said about this claim during oral arguments to the district court, for the record on appeal does not include transcripts of those arguments.
 
 
 [2]
 Hazel's complaint specifically states that after his injury,
 the wreckage of the 1978 Chevrolet truck was removed by wrecker and deposited in an upright position in his parent's back yard. Unaware of the defects, they destroied [sic] the wreckage 2 or 3 months later. The truck was not viewed or inspected by an engineer or anyone with expertise in automotive design.
 Complaint, p 35.