*729 KAREN NELSON MOORE, Circuit Judge,
concurring.
The Supreme Court has indicated two ways a RICO plaintiff may prove (or, as is the case here, allege) a “pattern of racketeering activity” by showing open-ended continuity. First, “[a] RICO pattern may surely be established if the related predicates themselves involve a distinct threat of long-term racketeering activity, either implicit or explicit.” H.J., Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 242, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). Alternatively, “the threat of continuity may be established by showing that the predicate acts or offenses are part of an ongoing entity’s regular way of doing business.” Id. I wholly agree with the majority’s analysis of the “regular way of doing business” method of alleging open-ended continuity. Further, I agree with the majority that Moon fails to allege a “distinct threat of long-term racketeering activity.” However, I offer different reasons for this conclusion.
As an initial matter, in determining whether Moon has alleged a threat of long-term racketeering activity, I do not believe we should consider events that transpired after the alleged racketeering acts ended. In United States v. Busacca, 936 F.2d 232 (6th Cir.1991), we noted that “the threat of continuity must be viewed at the time the racketeering activity occurred.” Id. at 238. See also Blue Cross & Blue Shield of Mich. v. Kamin, 876 F.2d 543, 545 (6th Cir.1989) (concluding that racketeering activity was open-ended because “if he had not been caught, there is no reason to believe [the defendant] would not still be submitting false claims”). Thus, the question we must answer is whether Moon has pleaded sufficient facts to conclude that, on the date of the last alleged racketeering act, there was a distinct threat of long-term racketeering activity.
Moon’s First Amended Complaint alleges the following:
• Moon’s benefits were terminated on July 24, 2003, J.A. at 10 (First Am. Compl. ¶ 9c);
• On March 25, 2004, his benefits were reinstated, J.A. at 11 (First Am. Compl. ¶ 9e);
• That same day, the Fund and the Service Company sent him a notice of examination, requiring him to be examined by Dr. Ray, J.A. at 11 ((First Am. Compl. ¶ 9f));
• The defendants previously had relied on Dr. Ray to write cut-off reports, id.;[1]
• On April 8, 2004, Dr. Ray examined Moon and wrote (and subsequently mailed) a fraudulent report concluding that Moon was not disabled, id.;
• On April 16, 2004, an employee of the Fund mailed Moon a notice of dispute claiming that he had no work-related disability, J.A. at 12 (First Am. Compl. ¶ 10).
Although nothing in these allegations indicates that, as of April 2004, the alleged racketeering activity would immediately cease, nothing indicates the type of “distinct threat of long-term racketeering activity” the Supreme Court referred to in H.J. In explaining what might constitute such a distinct threat, the Supreme Court offered the example of a thug’s extorting money from storekeepers and “telling his victims he would be reappearing each month to collect” additional payments. H.J., 492 U.S. at 242, 109 S.Ct. 2893. This example led us to state that a plaintiff seeking to prove open-ended continuity in *730 this manner must show acts that “by their nature ‘involve a distinct threat of long-term racketeering activity.’ ” Vild v. Visconsi, 956 F.2d 560, 569 (6th Cir.1992) (emphasis added). See also id. (“Similarly, the plaintiff cannot fulfill the open-ended formulations of the continuity test because he has not alleged facts which, by their nature, demonstrate only a threat of indefinite improper activity....”). Because the nature of the acts Moon alleges does not indicate a distinct threat of long-term racketeering activity, his First Amended Complaint does not sufficiently allege a RICO “pattern.”
For these reasons, I respectfully concur.

. Moon offers no direct allegation, however, that these prior reports were necessarily fraudulent.